Reynoldo S. ROCHA, and wife, Gloria Rocha, Appellants,

v.

U.S. HOME/HOMECRAFT CORPORATION, Appellees.

No. 16460.

Court of Appeals of Texas, San Antonio.

April 13, 1983.

Rehearing Denied June 1, 1983.

Thomas Rocha, Jr., San Antonio, for appellants.

Patrick K. Sheehan and Keith E. Kaiser, Cox & Smith, Inc., San Antonio, for appellees.

Before CADENA, C.J., and ESQUIVEL and REEVES, JJ.

## OPINION

CADENA, Chief Justice.

Plaintiffs, Reynoldo S. Rocha and wife, Gloria Rocha, appeal from a judgment, following a jury trial, awarding them damages and attorneys' fees in their suit seeking recovery for defects in a home purchased by them from defendant, U.S. Home Corporation, and for a retaining wall built by defendant on the lots purchased by plaintiffs after defendant had assured them that no portion of the retaining wall would be built on such lot. Plaintiffs complain that the judgment did not award them all the damages they were entitled under the pleadings, the evidence, and the jury verdict.

In their trial pleading plaintiffs asserted two causes of action. Under the caption, "First Cause of Action", they alleged that suit was brought under the Deceptive Trade Practices Act. This cause of action was based on several alleged defects in the house which they purchased from defendant. Under the caption, "Second Cause of Action", plaintiffs alleged that defendant, after representing to plaintiffs that a planned retaining wall would be built completely on the land adjoining the lot which plaintiffs purchased from defendant, built the stone wall completely on plaintiff's lot.

The jury found that defendant had made the representation in question and that plaintiffs had relied on it. However, the jury refused to find that the representation was material. In answers to other special issues, the jury found that the reasonable cost of removing the wall from plaintiffs' land and reconstructing it entirely on the adjacent land would be $7,265.00; that the reasonable market value of plaintiffs' lot and house both before and after construction of the wall was $60,950.00; that defendant had failed to install a light fixture and light switch in the utility room of plaintiffs' house, and that the cost of installing

such fixture and switch would be $50.00; that the cost of remedying defendant's failure to install glass panes in the garage door would be $44.00; and that the cost of correcting defects in the carpeting, heating and air conditioning ducts and roof of plaintiffs' house would be $2,800.00.

The trial court disregarded the jury finding that the cost of removing the wall and reconstructing it on adjacent land would be $7,265.00, and awarded plaintiffs no damages for the construction of the wall entirely on their lot instead of on the adjacent lot as defendant had promised. The judgment of which plaintiffs complain awarded them $8,490.00 as damages. This amount consisted of an award of $94.00 (the cost of installing the light fixture and switch in the utility room and of installing the glass panes in the garage door), and $8,400.00, being three times the cost ($2,800.00) of remedying the defects in the carpeting, ducts and roof. The amount of $2,800.00 was trebled under Tex.Bus. & Com.Code § 17.50(b) (Vernon Supp.1978).

By their points one and three plaintiffs complain that the trial court erred in disregarding the jury's finding that the cost of removing the encroaching wall was $7,265.00 and in awarding plaintiffs no damages resulting from the erection of the wall.

Plaintiffs correctly point out that if an injury to land is temporary and capable of being remedied without a permanent damage to the freehold, the proper measure of damages is the cost of restoring the land to its condition immediately preceding the injury and the value of its use for the period of injury with interest.[1]

Plaintiffs' complaint is based on the assumption that the injury to their land caused by the erection of the wall is temporary. However, the evidence concerning the possibility of removing the wall without damage to the freehold is conflicting.

One witness testified that the wall could be removed only by the use of jackhammers

---

1. There is no evidence concerning the value of the land occupied by the wall, and no issue inquiring as to such rental value was submitted to the jury.

and that the resulting vibrations would cause no damage to the nearby buildings. Another witness testified that the only way the wall could be removed without causing structural damage to the foundations of the nearby structures would be by using 15-pound sledge hammers.

■ No issue inquiring whether the injury was permanent or temporary was submitted to the jury. We must, therefore, presume that the unsubmitted factual issue was decided by the court in a manner which would support its judgment. Tex.R.Civ.P. 279. From the testimony, the trial court could reasonably conclude that removal of the wall could only be accomplished by the use of jackhammers, and that the removal by the use of sledge hammers, which was the only method by which injury to the freehold could be avoided, was not possible. That is, the evidence supports the conclusion that the wall could not be removed without injury to the nearby structures and that the injury was, therefore, permanent and not temporary.

■ In an encroachment case, if the injury to the land is permanent, the measure of damages is the decreased value of the land; that is, the difference in market value of the land before the injury and its market value after the injury. *Kraft v. Langford*, 565 S.W.2d 223 (Tex.1978). Since we must presume that the trial court found the injury to be permanent, the cost of removing the wall, which is the measure of damages in case of a temporary injury, became immaterial and was properly disregarded. Since the jury found no diminution in the market value of the land resulted from the encroachment, the court correctly denied plaintiffs' compensation for its erection.

Since plaintiffs suffered no damage from the erection of the wall, the jury's failure to find that the representation was material becomes irrelevant. We, therefore, need not decide whether materiality of the representation was established as a matter of law or by the great weight and preponderance of the evidence. Plaintiffs' points two and five, even if sustained, would not re-quire a reversal of the trial court's judgment.

■ Points six, seven and eight assert that the trial court erred in not trebling the damages resulting from defendant's failure to install a light fixture and light switch in the utility wall and glass panes in the garage door, as well as the damages caused by the erection of the wall. These points are without merit.

While the court was considering defendant's objections to the charge, the court pointed out that the charge contained no deceptive trade practice issues relating to the light switch and light fixture and panes in the garage door, and expressed doubt as to whether plaintiffs would be entitled to treble damages in any event. Counsel for plaintiffs replied: "I said I was not asking for treble." The judge again repeated his doubt concerning plaintiffs' right to treble damages and plaintiff replied: "I've already conceded that. It does not take me an hour to concede that."

With reference to the complaint concerning the trebling of damages flowing from the erection of the wall, it should be sufficient to point out that plaintiffs' cause of action for the encroachment was not included in their "First Cause of Action", by which they sought recovery for deceptive trade practices. Even if the cause of action for encroachment was based on deceptive trade practices, plaintiffs proved no damages which could be trebled. Finally, counsel for plaintiffs told the court that plaintiffs sought treble damages "only under the first cause of action", and not "as to the encroachment, which is not brought under Chapter 17 of the Uniform Business and Commercial Code." Chapter 17 of the Business and Commerce Code is the Deceptive Trade Practices Act.

■ Plaintiffs insist that under section 17.42 of the Business and Commerce Code their waiver of their rights under the Deceptive Trade Practices Act must be considered null and void. This nullification of waiver by the consumer of the provisions of the Act is clearly not applicable here. The

section in question was clearly intended to void any attempt by a consumer to agree, in the relevant contract, to release any claim which they may have under the statute. It certainly cannot be applied in a situation where a consumer, in open court, insists (at one point with apparent irritation) that he is not seeking treble damages and induces the court to omit the submission of any issues relating to the trebling of damages.

An answer inquiring whether there were any defects in the drainage system of the lot was submitted and answered by the jury in the negative. By their eighth and ninth points plaintiffs contend that the existence of such defects was established as a matter of law or, in the alternative, that the jury's answer was against the great weight and preponderance of the evidence.

■ In considering the assertion that the existence of defects was established as a matter of law, we consider only the evidence which upholds the finding of no defects. In considering the assertion that the finding of no defect was against the great weight and preponderance of the evidence, we must examine all of the evidence, including that which, if believed by the jury, would support a finding of a defect. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Defendant's president testified that the "grades" of the land showed that the lot drained properly. Another witness testified that there was no drainage problem. This clearly constitutes some evidence of the absence of a drainage problem. On the other hand, another witness testified, in effect, that there was an area of drainage where water would come onto the rear patio, which "would be an inconvenience." He could express no opinion as to whether this would cause any damage to the house. Another witness testified that he had observed a residual of mud and dirt on the rear patio. Mr. Rocha testified that when the water "comes down [from a heavy rain], obviously, if it is heavy it begins to accumulate" .... when the rain stops, the water "does not continue to drain, but, rather, remains there and ... seeps down into my foundation to

disappear...." However, he also testified that he had constructed a concrete driveway, causing water to be diverted to the patio after it flowed down the driveway.

■ We cannot, after viewing all of the evidence, conclude that the jury's answer was so against the great weight and preponderance of the evidence as to be manifestly unfair.

Point eleven asserts that the trial court erred in not permitting plaintiffs to introduce in evidence the plans and specifications of the house. Plaintiffs prepared no bill of exception. The plans and specifications are not before us. As a result, it is impossible to determine whether their exclusion was harmful.

Plaintiffs, in point four, contend that the trial court erred when it instructed the jury to disregard the effect of the retaining wall on the reasonable market value of the house and lot. This point refers to special issue fifteen, which inquired concerning "the reasonable market value of the house and lot involved in this suit immediately after the house was constructed." The jury answered, $60,950.00.

In their brief, plaintiffs grouped points one through five together for the purpose of argument, saying that such five points "involve the determination of the central issue of damages caused to plaintiff's property by the retaining wall." In answer to special issue five the jury had found that the value of the property prior to the erection of the wall was $60,950.00, and in answer to special issue six the jury found that the value of the house and lot after the erection of the wall was $60,950.00.

■ The argument under points one through five contains few references to issue fifteen. At one point it is said that the findings on issues "3, 5, 6, and 15 are not in irreconcilable conflict because they do not inquire about the same material fact." We agree that there is no conflict among the answers to these four issues. Issue three concerns the materiality of the representation concerning the location of the proposed wall. Issues five and fifteen are not in

conflict, although they seek a determination of the value of the property *prior* to the erection of the wall, since the jury answered both issues in the same manner. Issue six sought a determination of the value of the property *after* the construction of the wall. We find nothing in the record which indicates that the trial court rendered judgment on the theory that issues, three, five, six, and fifteen were in conflict.

At another point plaintiffs state that issues three, five, six, and fifteen must be construed together, and that issue fifteen "instructed the jury to disregard the effect of the wall on the property," and issue "3, if true, would simply establish that plaintiffs were not kept from buying their house because defendant said that the wall would be built" on the adjacent property. Finally, plaintiffs say, "Questions 5 and 6, when construed together with Question 15, merely show that the fair market value of the house—if free from defects—was the same as the purchase price."

Even if the manner of submission of issue fifteen was erroneous, we cannot see the materiality of such error. Plaintiff's brief does not demonstrate how such error could possibly affect the result in this case. In answer to issue sixteen the jury found that the defects in the house (absence of electric fixture and switch in utility room, absence of panes in garage door, and defects in the carpet, heating and air conditioning ducts and the roof), decreased the market value of the house. Perhaps issues fifteen and sixteen were submitted for the purpose of determining the diminution in the market value of the house due to such defects. However, plaintiffs did not seek recovery for such defects on that theory. They sought to recover the cost of remedying such defects. The judgment awards them damages based on such costs, and they do not here complain that the award of damages based on the cost of remedying the defects was error.

The judgment of the trial court is affirmed.