**MBANK FORT WORTH, N.A. (formerly Continental National Bank of Fort Worth) Plaintiff,**

v.

**TRANS MERIDIAN, INC. Robert G. Tunnell, Gale Tunnell Itaf Daou, Ghalee A. Hamadeh, Mary Hamadeh, Charles L. Ward, Barbara Ward, H.J. Van Praag, and Laiping F. Van Praag, Counterclaim Plaintiffs,**

v.

**MBANK FORT WORTH, N.A. (formerly Continental National Bank of Fort Worth), Sabre Exploration Corp., John C. Andrews, and Gerald T. Langford, Counterclaim Defendants.**

Civ. A. No. 4–83–13–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 20, 1985.

John Keker, Keker & Brokett, San Francisco, Cal., for TMI.

Edward L. Kemble, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, Tex., for Sabre.

Sam J. Day, McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, Tex., for plaintiff MBank.

## MEMORANDUM OPINION

MAHON, District Judge.

At the close of the evidence in this case and prior to the charge to the jury, the Court was asked by the parties to resolve certain questions of law regarding the applicability of certain statutes and defenses to the facts of this case. The Court carried these requests to alter the jury's deliberation so that fact findings could be made as to each alleged cause of action, thereby obviating the need for a new trial in the event this Court errs in its ruling. On May 7, 1985, the jury returned their verdict. Thereafter, on May 13, 1985, the Court ordered all parties to submit proposed forms of judgment and accompanying briefs in support thereof for consideration by the Court. In the briefs, the Court asked that the following issues be addressed:

1. Whether the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code § 17.41 *et seq.* (hereinafter referred to as "DTPA") applies to the facts of this case;

2. Whether Tex.Rev.Civ.Stat.Ann. art. 5539c (Vernon's 1985) prevents the application of the statute of limitation defense to the counterclaim upon which the TMI Group prevailed; and

3. Whether the waiver defense applies to a DTPA claim.

Each party filed proposed forms of judgments, accompanying briefs, reply briefs and letter briefs pursuant to the Court's order. After careful consideration of all the briefs filed, the record in this case and the applicable law, the Court makes the following determination to those questions of law previously presented to the Court so that a judgment may be entered.

## I. *Background*

This case revolves around the sale of a participating working interest in certain oil and gas leases in the South Hamel field in Colorado County, Texas between the TMI Group[1] and Sabre Exploration.[2] A final agreement called a Drilling and Participation Agreement was executed by the TMI Group and Sabre on August 1, 1980. Thereafter, in December 1980 and July 1981,[3] MBank made two loans to the TMI Group totaling $1 million. The TMI Group pledged its interest in the South Hamel field to MBank as security for the loans. The loans eventually became delinquent and in December of 1982, MBank filed suit against the TMI Group to collect the unpaid balances of the notes, to foreclose on the oil and gas properties securing pay-

---

1. "The TMI Group" consists of Trans Meridian, Inc., Robert E. and Gale Tunnell, Itaf Daou, Ghaleb A. Hamadeh, Charles L. and Barbara Ward, and H.J. and Laiping Van Praag.

2. "Sabre Exploration" or "Sabre" consists of Sabre Exploration Corp.; John C. Andrews and Gerald T. Langford.

3. "MBank" is the shortened name of MBank Fort Worth, N.A., formerly Continental National Bank of Fort Worth.

ment of the notes, and to recover the deficiency upon foreclosure.

On January 11, 1983, the TMI Group answered MBank's suit by filing a counterclaim against Sabre and MBank, contending that Sabre and MBank defrauded them and that they should not be required to repay the loans. Specifically, the TMI Group alleged that they were induced into investing into the South Hamel field by fraudulent misrepresentations and omissions by both Sabre and MBank pursuant to an overall plan on the part of Sabre and MBank to recoup losses from unsuccessful drilling. The TMI Group claimed that these facts gave rise to causes of action for common law and statutory fraud, negligent misrepresentation, violations of Texas and federal securities laws, and a violation of the Texas Deceptive Trade Practices-Consumer Protection Act.

Sabre and MBank denied that they violated any state or federal law or committed any fraud, and asserted various affirmative defenses to the TMI Group's claims which would preclude any recovery on the part of the TMI Group. Specifically, they allege that the TMI Group's actions were barred by the applicable statute of limitations; that members of the TMI Group were contributorily negligent and proximately caused their own damages; that the TMI Group had superior knowledge of the operations in the South Hamel filed as early as July 1980 but misrepresented and concealed any unfavorable information to the Bank's and Sabre's detriment; that the TMI Group failed to prevent or mitigate their damages by seeking loans from MBank after they knew of the rights to proceed against Sabre; and that by their actions, the TMI Group waived any right to relief for any alleged misrepresentations based on the original Drilling Participation Agreement.[4]

## II. *Jury Findings*

The jury was charged on each of the TMI Group's theories of recovery as well as each of Sabre's and MBank's defenses. The jury found that the TMI Group did not establish fraud against either Sabre or MBank.[5] On the TMI Group's negligent misrepresentation claim, the jury found that the TMI Group established a claim against MBank but not against Sabre. The jury also found that the TMI Group was contributorily negligent and attributed the percentage of the fault 90% to the TMI Group and 10% to MBank.

The jury found that both Sabre and MBank violated the DTPA by engaging in any one or more false or deceptive acts, practices or omissions in the conduct of its trade or business. The jury found that Sabre but not MBank violated section 12(2) of the Securities Act of 1933 and that neither Sabre nor MBank violated section 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934 or the Texas Securities Act.

As to the defenses issues raised by Sabre and MBank, the jury found that the TMI Group failed to exercise due diligence in investing in the drilling program in the South Hamel field; that the TMI Group waived their right to complain of Sabre's and MBank's conduct with respect to the TMI Group's investing in the drilling program in the South Hamel field; and that the TMI Group did discover or should have discovered the untrue statements and omissions which the jury found prior to January 10, 1981—more than two years prior to the TMI Group's filing of its counterclaim.

The jury then went on to award actual damages to each member of the TMI Group. The jury also awarded punitive damages to be assessed only against Sabre.

It is clear, based on the jury verdict, that the TMI Group did not prevail on its claim for negligent misrepresentation against

---

4. Sabre also claimed that they were defrauded by the TMI Group. Because the jury failed to find for Sabre on this claim, no further discussion will be given to it.

5. The jury was charged on three theories of fraud: misrepresentation, failure to disclose and statutory fraud.

MBank and on its claim for a violation of section 12(2) of the Securities Act of 1933 against Sabre. The defenses of waiver, which is applicable to both claims, and due deligence, which applies only to the security claim, are a complete bar to the TMI Group's recovery on these bases of recovery.[6]

The TMI Group argues that they prevailed in their DTPA claim against both MBank and Sabre because the defense of waiver does not apply to claims under the DTPA and because article 5539c of the Tex.Rev.Civ.Stat.Ann. (Vernon's 1985) prevents the application of the statute of limitations defense to the counterclaims upon which the TMI Group prevailed. The TMI Group also argues that even if its affirmative claim under the DTPA is barred by the statute of limitations, the jury's verdict constitutes an affirmative defense to MBank's original claim on the notes. MBank and Sabre argue that the DTPA is inapplicable to the facts of this case because the TMI Group are not "consumers" as defined in the Act; that article 5539c does not extend the statute of limitations of the TMI Group's DTPA claim; and that the defense of waiver applies to a DTPA claim.

III. DTPA

■ The Court's analysis must begin with whether or not the TMI Group prevailed on its affirmative claim under the DTPA. Although the jury found that both Sabre and MBank engaged in deceptive practices, their actions cannot give rise to a private cause of action for damages under the DTPA unless the TMI Group can first qualify as a "consumer" as defined in the

Act. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 388 (Tex. 1982); *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980). "Consumer" is defined in § 17.45(4) as "an individual, partnership, corporation or governmental entity, who seeks or acquires by purchase or lease any goods or services." "Goods" are defined in § 17.45(1) as "tangible chattels or real property purchased or leased for use." "Services" are defined in § 17.45(2) and include "work, labor or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." Furthermore, these goods or services acquired by the consumer must form the basis of the DTPA complaint. *Knight*, 627 S.W.2d at 388; *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex.1981); *Riverside*, 603 S.W.2d at 175.

Thus, there are two requirements which must be satisfied before a person may maintain a cause of action under the DTPA: (1) a person must have sought or acquired goods or services by purchase or lease for use, and (2) the goods or services purchased or leased must form the bases of the complaint. "If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress." *Cameron*, 618 S.W.2d at 539.

MBank and Sabre argue that the TMI Group is not a "consumer" because the oil and gas interests purchased by the TMI Group were "securities"[7] and therefore cannot also be "goods" within the terms of the DTPA. The TMI Group argues that because the DTPA's definition of goods

---

**6.** It is therefore unnecessary at this juncture to determine whether the statute of limitations defense bars recovery on these claims.

**7.** At the close of the evidence the Court found as a matter of law that the TMI Group's investment in the South Hamel field was a security transaction for purposes of both the federal and state securities laws. Not only were the oil and gas leases securities as defined in the securities acts, but the drilling and participation agreement was an investment contract within the meaning of

the acts. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946); *S.E.C. v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); *Williamson v. Tucker*, 645 F.2d 404, 418–19 (5th Cir.) *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Doran v. Petroleum Management Corp.*, 545 F.2d 893 (5th Cir.1977); *Nor-Tex Agencies, Inc. v. Jones*, 482 F.2d 1093, 1098 (5th Cir.), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 873 (1973).

includes "real property purchased or leased for use" and the oil and gas interests purchased by them were interests in real property, they are "consumers."

Texas courts have held that a security is not a "good" within the meaning of the DTPA. *See Swenson v. Englestad,* 626 F.2d 421, 428 (5th Cir.1980); *Portland Savings and Loan Assoc. v. Bevill, Bresler & Shulman Government Securities, Inc.,* 619 S.W.2d 241, 245 (Tex.Civ.App.—Corpus Christi 1981, no writ); *First State Bank, Morton v. Chesshir,* 613 S.W.2d 61, 62 (Tex.Civ.App.—Amarillo 1981, no writ). *See also Riverside,* 603 S.W.2d at 175. These cases however dealt with the purchase of stock certificates and certificates of deposit, instruments traditionally understood as securities or intangibles. The facts of this case present a different security transaction and do not fall squarely within these holdings. Here, the TMI Group purchased interests in real property, interests which were recorded in the county in which the property was located, and later foreclosed upon by MBank.

In *Cherokee Water Co. v. Forderhouse,* 641 S.W.2d 522 (Tex.1982), the Texas Supreme Court held that the execution of an oil and gas lease to a third party was a sale of an interest in land. *See also Duke v. Sun Oil Co.,* 320 F.2d 853, 858 (5th Cir. 1963) ("In Texas, ordinary oil and gas leases is a transfer and conveyance of real property so that title to the oil and gas in place is vested in the lessee thereunder."); *Mayers v. Sanchez-O'Brien Minerals Corp.,* 670 S.W.2d 704, 709 (Tex.App.—San Antonio 1984). Accordingly, the TMI Group maintains that in addition to being a security transaction, the interests in oil and gas leases it purchased from Sabre constitutes a "good" under the DTPA.

The issue of whether the sale of oil and gas leases can give rise to liability under both federal and state securities laws and the DTPA was addressed in *Vick v. George,* 671 S.W.2d 541 (Tex.App.—San

Antonio 1983), *aff'd in part and rev'd and remanded in part, George v. Vick,* 686 S.W.2d 99 (Tex.1984) (per curiam). The suit in *Vick v. George* arose from the sale of interests in an oil and gas venture. The plaintiffs proceeded under theories of common law fraud and recission, state and federal securities laws and the DTPA. After trial to a jury, the trial court rendered judgment for recession and restoration of the purchase price with interest under the Texas Securities Act in favor of the plaintiffs against defendants, Jack Vick, John Askew and Penny McClean although the jury found that the defendants had also engaged in deceptive trade practices.[8] In its judgment, the trial court explained why it allowed recovery only under the Texas Securities Act:

> And the Court having asked the plaintiffs to elect what remedy they desire of the various theories in the pleadings and of the jury verdict, and the plaintiffs having refused to waive any specific remedy, the Court decided to award relief pursuant to recission under the Texas Securities Act.

671 S.W.2d at 550.

The Court of Appeals reversed the judgment in its entirety and remanded the case for a new trial. In commenting on points "which may arise again in the trial court," the Court stated:

> Plaintiffs correctly state that recovery under either the TSA or the DTPA is not exclusive of any other rights or remedies that may exist. It is axiomatic, however, that an aggrieved party is entitled to but one recovery for the same loss. Where damages are sought under the Section 17.50(b)(1) (amended 1979), recovery is limited to three times the amount of actual damages proved, since damages cannot be quadrupled by also recovering restoration of the consideration paid.

*Id.* at 551 (citations omitted).

It appears to this Court that the purpose of this statement was to assure the parties

---

**8.** The trial court also rendered judgment that the plaintiffs take nothing against defendants

Calvin Vick and James Baxter.

that recovery could not be had under both the Texas Securities Act and the DTPA. Because there is nothing in the opinion to indicate that anyone challenged the applicability of both statutes to the facts of the case, it further appears to this Court that the Court of Appeals recognized that the transaction could come within both statutes, and simply allowed the plaintiffs a choice between the two remedies. *See id.* at 550.

In its per curiam opinion in the same case, the Texas Supreme Court stated:

The Court of Appeals correctly adjudicated the points on appeal, but because its remand for a new trial of all parties and issues is contrary to Rule 434 Tex.R. Civ.P., we grant the writ of error and without hearing oral argument reverse the judgment in part and partially remand the case to the court of appeals.

*George v. Vick,* 686 S.W.2d at 100. The Supreme Court remanded on an issue wholly unrelated to the issue before this Court. Again it appears to this Court that the parties did not raise and the Supreme Court did not address the question which is now before this Court.[9]

Nevertheless, because the Supreme Court did not reverse that part of the Court of Appeals' decision which this Court interprets as permitting a transaction to be both a security and a good under the DTPA, the Court finds that the purchase of a fractional interest in oil and gas is a "good" as that term is defined in the DTPA. This finding is consistent with Texas cases which have held that a purchaser of real estate for

investment purposes is a consumer under the meaning of the DTPA. *See First Texas Savings Association v. Stiff Properties,* 685 S.W.2d 703 (Tex.Civ.App.—Corpus Christi (1984); *Gibbs v. Main Bank of Houston,* 666 S.W.2d 554 (Tex.App.—Houston 1984).

Accordingly, the Court holds that the August 1, 1980 transaction between the TMI Group and Sabre involved the purchase of a good for purposes of the DTPA. Furthermore, it is clear that this purchase formed the basis of the TMI Group's counterclaim. Therefore, the TMI Group has satisfied the requirements to maintain a cause of action under the DTPA against Sabre.

■ Having found that the TMI Group qualifies as a "consumer" with respect to Sabre, the Court must now determine whether the TMI Group has standing as a "consumer" as to MBank. MBank contends that the TMI Group is not a "consumer" as to MBank under the criteria established by Texas courts for subjecting third party lenders to liability under the DTPA. The Court disagrees.

It is clear under Texas law that a consumer can bring a DTPA action against anyone in the transaction who violated the Act, including a third party lender. *See LaSara Grain v. First National Bank of Mercedes,* 673 S.W.2d 558 (Tex.1984); *Flenniken v. Longview Bank and Trust Company,* 661 S.W.2d 705 (Tex.1983); *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382 (Tex.1982). In *LaSara*

---

**9.** In its brief, the TMI Group states that the Court of Appeals reversed the trial court's refusal to enter judgment in both the Texas Securities Act and DTPA claims and that this "holding was affirmed by the Texas Supreme Court, which stated that '[T]he Court of Appeals correctly held that the trial court erred in failing to render judgment ... for violations of the Deceptive Trade Practices Act.' *George v. Vick, supra,* 686 S.W.2d at 100." TMI Group's reply brief in support of proposed judgment at 7.

The TMI Group wholly misconstrues the holding of both the Court of Appeals and Supreme Court opinions. The above quote from the Supreme Court opinion omits reference to Defendant Calvin Vick. The trial court disregarded the

jury's verdict on the DTPA issue as to Calvin Vick and rendered judgment that the plaintiffs take nothing against him. On appeal, the plaintiffs claimed that there was sufficient evidence to support a verdict under the DTPA against Calvin Vick. The Court of Appeals agreed. 671 S.W.2d at 549–50. The Supreme Court simply reversed the Court of Appeals remanding this part of the cause of action and rendered judgment against Calvin Vick for violations of the DTPA.

This Court assumes that the misrepresentations of the holdings of these cases on the part of the TMI Group was attributable to over zealous advocacy and was not in any way intended to deliberately mislead the Court.

*Grain,* the Texas Supreme Court stated that a "lender may be subject to a DTPA claim if the borrower's 'objective' is the purchase or lease of a good or service thereby qualifying the borrower as a consumer." 673 S.W.2d at 567. Thus, it is immaterial whether or not MBank provided a service. "If in the context of a transaction in goods or services, *any person* engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the DTPA." *Flenniken,* 661 S.W.2d at 707 (emphasis added).

MBank was sufficiently involved in the South Hamel Field transaction to be equally responsible for the conduct of the transaction. The TMI Group's objective in the transaction which forms the basis of the complaint was the purchase of oil and gas leases. Its borrowings from MBank were a means of financing the purchase.[10] The evidence adduced at trial shows that MBank knew from the beginning that the TMI Group's borrowing was for the purpose of acquiring oil and gas leases from Sabre. MBank's willingness to lend on the South Hamel Field project and the conditions under which it would do so were communicated to the TMI Group prior to the execution of the August 1, 1980 agreement with Sabre. *See* TMI Exhibit 51. Members of the TMI Group as well as MBank employees testified that the Bank's

willingness to lend on the project was discussed as early as July 1980. In November 1980, Dean Cochran, a loan officer with MBank, wrote in a presentation to MBank's loan and financial committee in which he recommended approval of the loan to the TMI Group, that the money borrowed by the TMI Group from MBank was being used to fund the drilling project in the South Hamel Field because Sabre did not have adequate funds to do so. TMI Exhibit 65. The same exhibit evidences that not only should MBank expect to receive "additional borrowing requests from the TMI Group when the next phase of the wells are drilled," but that the loan program with TMI represents the best way in which to assist Sabre in making their payments to MBank. *Id.*[11]

The Court finds that MBank, as a lender, is subject to a DTPA claim for its involvement in the August 1, 1980 transaction. This finding is based on the evidence presented at trial and is reflected by the jury's verdict. The jury found that MBank made misrepresentations and/or omissions which constituted false or deceptive acts or practices and that this conduct was a producing cause of the TMI Groups losses.[12]

Accordingly, the Court holds that the TMI Group prevailed in its affirmative claim under the DTPA against both Sabre and MBank.[13] The Court must now deter-

---

10. The fact that MBank did not make the first loan until nearly four and one-half months after the execution of the agreement is of no consequence. This issue was squarely resolved in *Flenniken* where the Texas Supreme Court stated:

> [T]he fact that the Bank's unreasonable course of action occurred after the [parties] entered into the contract for sale of the horse does not exempt the Bank from liability under the DTPA. Under section 17.50(a)(3) there is no requirement that the defendant's unconscionable act occur simultaneously with the sale or loan of the goods or services that form the basis of the consumer's complaint.

661 S.W.2d at 707.

11. In fact, the timing of the interest payments received by MBank from Sabre during the fall of 1980 make clear that THE LOAN PROGRAM WITH THE TMI Group was the best way to assist Sabre in making their payments. On July

30, 1980, two weeks after the TMI Group paid $300,000.00 to Sabre, Sabre made a payment of $12,000.00 to MBank. In September 1980, the TMI Group paid $375,000.00 to Sabre for drilling expenses; on September 29, 1980, Sabre made a payment of $44,000.00 to MBank. On December 31, 1980, the TMI Group paid $500,-000.00 which was borrowed from MBank to Sabre; on the same day, Sabre made a payment of $144,000.00 to MBank. *See* TMI Exhibit 174.

12. Having found that MBank is subject to a DTPA claim as a third party lender, it is unnecessary for the Court to determine whether MBank may also be subject to a DTPA claim for providing services as that term is defined in the Act.

13. Although the Court finds this ruling to be correct under Texas law, the Court also finds it to be disconcerting. Given the many remedial statutes designed to protect against commercial

mine whether this claim is barred by the statute of limitations and if so, whether it still constitutes an affirmative defense to MBank's original action on the notes.

## IV. *Statute of Limitations*

The DTPA provision on limitations is set forth in section 17.56A and provides:

> *All* actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.

Tex.Bus. & Comm.Code Ann. § 17.56A (Vernon's 1985) (emphasis added).

The jury found in question number 63 of the verdict that the TMI Group did discover or should have discovered both Sabre's and MBank's deceptive acts on or before January 9, 1981. Accordingly, section 17.56A requires the TMI Group to bring its DTPA suit within two years, i.e., on or before January 9, 1983[14] which the TMI Group admittedly did not do. The TMI Group did not file its counterclaim until January 10, 1983. Thus it appears that its claim is barred by limitations.

The TMI Group argues, however, that 5539c of Texas Civil Statutes makes timely its tardy DTPA claim. Article 5539c provides:

> In the event a pleading asserting a cause of action is filed under circumstances where at the date when answer thereto is required by law a counterclaim or cross claim would otherwise be barred by the applicable statute of limitation, then the party so answering may, within 30 days following such answer date file a counterclaim or cross claim in such cause and the period of limitation is hereby extended for such period of time provided that the counterclaim or cross claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.

Tex.Rev.Civ.Stat.Ann. art. 5539c (Vernon's 1985).

This provision permits a party to assert by counterclaim or cross-claim a claim which, although otherwise barred by the applicable statute of limitations, arises from the same transaction or occurrence that is the subject matter of the lawsuit. The TMI Group maintains that its DTPA claim arose out of the "same transaction or occurrence" underlying MBank's action on its notes. Having already addressed this issue in discussing MBank's liability under the DTPA as a third party lender, the Court finds that the TMI Group's borrow-

---

fraud, the Court is of the opinion that the Texas legislature never envisioned the DTPA to be used as it is today against sophisticated business people to redress this type of fraud. By its very name, Deceptive Trade Practices—Consumer Protection Act, the DTPA evokes such transactions as the sale of a home or the purchase of a car. Acknowledging that there are invariably situations not expressly anticipated by the legislature when enacting a statute, the Court is apprehensive over the way in which a dispute between business people can be converted into a DTPA action mandating treble damages.

The Court's concern is fueled by the many analogies drawn between the use of the DTPA and the civil provisions of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* As with the DTPA in this case, civil RICO, with its treble damage, divestiture and injunctive provisions, is being applied against legitimate business people in cases of ordinary fraud and breach of contract. Of course, any changes in the DTPA, as with RICO, can only come from the legislature. However, until such changes, if any, are made, this Court does not believe that Texas courts are required to read the DTPA as broadly as this Court fears is being done.

**14.** No one has claimed that the proviso for extending the period for 180 days as quoted above is applicable to this case. Therefore, the Court will not consider it.

ing from MBank was solely in connection with Sabre's South Hamel drilling program. Nevertheless, the Court finds article 5539c inapplicable to the TMI Group's DTPA claim.

In *Brooks Fashion Stores, Inc. v. North Park National Bank,* 689 S.W.2d 937 (Tex. App.—Dallas 1985, no writ) the Texas Court of Civil Appeals in Dallas recently held that "section 17.56A governs exclusively the limitations period applicable to DTPA suits." *Id.* at 943. Although the Court did not specifically address the application of article 5539c to a DTPA claim, this Court finds that the Court of Civil Appeals' opinion to be controlling on this issue.

In *Brooks* the appellant argued that section 17.56A permits a longer limitations period for DTPA claims arising from contracts than would apply to those violations not involving a contractual relationship. In rejecting this argument, the Court examined the legislative history behind section 17.56A. Prior to the enactment of section 17.56A, the DTPA contained no limitations provision and courts relied on other statutes and caselaw to determine the applicable limitations period. *See id.* at 942. In enacting section 17.56A, however, "the Legislature must have known of the pre-existing limitations law, and intended every word of the new limitations provision to have meaning." *Id.* at 943 (citations omitted). Thus, the Court held to "ignore the plain meaning of the legislative mandate that '[a]ll [DTPA] actions' be brought within two years of the deceptive act would engraft upon this section an exception for which the Legislature could have easily provided had it chosen to do so." *Id.*

The Court finds that the only limitations provision which applies to a DTPA claim is that contained in section 17.56A. Had the Legislature intended to give DTPA claimants the benefit of other savings provisions outside that contained in this section, they could have easily provided for such in section 17.56A. Having not done so, there-

fore, the TMI Group's argument that article 5539c allows them to avoid the application of section 17.56A is without merit. Accordingly, the Court finds that the TMI Group's affirmative DTPA claim upon which it prevailed against both Sabre and MBank is barred by the applicable statute of limitations.[15]

■ The statute of limitations stands on a different footing, however, with respect to MBank's original claim on the notes. It is clear in Texas that where the subject matter of an affirmative defense or recoupment arises out of the same transaction or occurrence as the claim itself, it may defeat a plaintiff's claim even though it would be barred by the statute of limitations if affirmatively brought. This is especially true where fraud is pled as a defense to a suit on the contract even though at the time such defensive plea is made, it would be barred by limitations if asserted as a basis for recovery of damages. *See Southern Pacific Co. v. Porter,* 160 Tex. 329, 331 S.W.2d 42 (1960) (Limitations does not apply to a plea of recoupment arising from the same transaction as plaintiff's claim and predicated on a factor that would vitiate the contract as of the time the contract was made.); *Bodovsky v. Texoma National Bank of Sherman,* 584 S.W.2d 868 (Tex. Civ.App.—Dallas 1979, writ ref'd n.r.e.); *Garza v. Allied Finance Co.,* 566 S.W.2d 57, 59 (Tex.Civ.App.—Corpus Christi 1978); *Finger v. Morris,* 468 S.W.2d 572 (Tex.Civ. App.—Houston 1971, writ ref'd n.r.e.); *Reynolds-Southwestern Corp. v. Dresser Industries, Inc.,* 438 S.W.2d 135 (Tex.Civ. App.—Houston 1969, writ ref'd n.r.e.); *Morris-Buick Co. v. Davis,* 127 Tex. 41, 91 S.W.2d 313 (Tex.Com.App., op. Adopted).

In *Bodovsky,* the Bank brought an action against the borrowers on certain promissory notes. The borrowers pled fraudulent misrepresentations and fraudulent concealment as a defense and also counterclaimed for damages for fraud. On appeal, the Court held that "the unchallenged jury findings support the allegations of fraud as

---

**15.** Such a finding therefore, renders it unnecessary for the Court to determine whether the waiver defense applies to the TMI Group's affirmative DTPA claim.

a defense or offset to the main claim, but that the plea of limitation was properly sustained with respect to the counterclaim because of jury findings that [the counterclaim based on fraud was barred by the two year statute of limitations]." 584 S.W.2d at 871–72. The Court affirmed the judgment that the counterclaim was barred by the statute of limitations but reversed the trial court's rendering judgment for the bank on the main claim. *Id.* at 878.

The Court already determined that the subject matter of the TMI Group's claims and defenses arose out of the same transaction as MBank's original claim. The only difference between the facts in *Bodovsky* and here is that here, the TMI Group is trying to use the DTPA as a defense to MBank's action on the notes and not common law fraud. In *Bodovsky*, the jury found that the borrowers had made out a prima facia case for common law fraud. *See id.* at 872. Nevertheless, the Court finds that this distinction does not preclude the TMI Group from using the DTPA as an affirmative defense. The jury found that MBank made misrepresentations and/or omissions which constituted false or deceptive acts or practices and that this conduct was a producing cause of the TMI Group's losses. These same misrepresentations and omissions formed the basis of the TMI Group's affirmative defense and it is of little consequence that the misrepresentations and omissions gave rise to liability for one theory of recovery and not another. All the theories of recovery propounded by the TMI Group can be classified under the general heading of "fraud." *Accord. Garza v. Allied Finance Co.*, 566 S.W.2d at 62–63. (Court allowed the borrowers' Truth-In-Lending Act claim to be used in the nature of a recoupment to the Finance Company's suit on a promissory note even though it was admitted the claim would have been barred by the statute of limitations if it would have been brought as an original claim.)

Having found that the statute of limitations does not prevent the TMI Group from asserting the DTPA as an affirmative defense to MBank's claim on the notes, the Court must now determine whether the jury's finding that the TMI Group waived their right to complain of MBank's conduct bars the use of the DTPA as an affirmative defense. Section 17.42 of the DTPA, as applicable to this case, provides that "[a]ny waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void." The TMI Group argues that this language applies to any type of waiver of the DTPA whereas MBank contends that this anti-waiver provision only applies to contractual waivers made at the time of the underlying transaction and not to post-transactional waivers as is the case here.

█ The law is clear in Texas that one can waive any right including the right to assert a defense, to which one is legally entitled, whether that right is secured by contract, statute or guaranteed by the Constitution. *See Williams v. Williams*, 548 S.W.2d 492, 493 (Tex.Civ.App.—Austin 1977), *aff'd in part and rev'd in part on other grounds*, 569 S.W.2d 867 (Tex.1978); *Yandell v. Tarrant State Bank*, 538 S.W.2d 684, 687 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); *see also, Bodovsky v. Texoma National Bank of Sherman*, 584 S.W.2d at 872–74 (Court recognized bank's right to claim waiver to fraud defense but found that record did not show that a waiver in fact occurred). MBank argues that the rights given consumers under the DTPA are not exempt from this doctrine and relies on two recent Texas Court of Appeals decisions involving the DTPA. The first is *U.S. Home Corp. v. Hickie*, No. 01–83–00550–CV (Tex.Civ.App.—Houston December 27, 1984, writ ref'd n.r.e.) and the second is *Rocha v. U.S. Homecraft Corp.*, 653 S.W.2d 53 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The Court finds that neither of these cases requires a limited application of § 17.42.

In *Hickie*, plaintiffs purchased a house with a detached two car garage which, because of its placement behind the house, was allegedly incapable of enclosing two cars. Plaintiffs sued under, *inter alia*, the

DTPA for the inadequate garage. A default judgment was entered and defendant filed a motion for new trial claiming that it had a meritorious defense. The trial court denied the motion. The Court of Appeals reversed and remanded for a new trial holding that defendant set up a meritorious defense based on the undisputed testimony that plaintiffs knew of the placement and dimensions of the garage on the property prior to the sale. Although the Court of Appeals referred to this as a "defense of waiver," the Court finds that this was in fact a defense that there was no violation of the DTPA because the acts of defendant, even if deceptive, were not a producing cause of any damages suffered by plaintiffs. In contrast, the jury in this case found that MBank made misrepresentations and/or omissions which were a producing cause of the TMI Group's losses.

In *Rocha*, plaintiff's attorney stated in open court that he was not seeking treble damages under the DTPA. On appeal, plaintiff argued that under § 17.42, this statement must be considered null and void. The Court of Appeals disagreed, holding that § 17.42 does not apply to this situation. The waiver claimed in *Rocha* was of a completely different nature than the waiver claimed here. Here the defense of waiver was based on the TMI Group's subsequent conduct with MBank and Sabre and was akin to estoppel. In *Rocha*, on the other hand, defense of waiver was wholly unrelated to any course of dealing between the parties.

In dicta, the Court of Appeals went on to state that § 17.42 was intended only to prevent a release in the relevant contract of any possible claim under the DTPA. *See* 653 S.W.2d at 56–57. The Court finds this statement not only not controlling on this issue but also at odds with how this Court feels the Texas Supreme Court would resolve the issue. *See supra* note 13. The DTPA is a broad remedial statute which is to be liberally construed to pro-

mote its underlying purpose and § 17.42 was drafted consistent with this purpose. *See* § 17.44 of the DTPA. If the Texas legislature wanted to draft a narrow anti-waiver provision, it was free to do so.[16] Furthermore, a broad reading of § 17.42 is consistent with this Court's prior analysis of the definition of "consumer." Therefore, the Court finds that § 17.42 precludes MBank from asserting the defense of waiver to the TMI Group's affirmative defense to MBank's claim on the notes.

Accordingly, the Court finds that even though the TMI Group's affirmative claim under the DTPA is barred by the statute of limitations, the jury's verdict nevertheless constitutes an affirmative defense to MBank's claim on the notes.

## V. *Conclusion*

In sum, the Court finds that the TMI Group qualifies as a "consumer" within the meaning of the DTPA and therefore based upon the jury verdict, prevailed on its affirmative claim under the DTPA. The Court further finds that the limitations provision contained in the DTPA is exclusive and therefore bars the TMI Group's affirmative claim under the DTPA. Nevertheless, the Court finds that neither the statute of limitations nor the defense of waiver is available to MBank to defeat the TMI Group's affirmative defense to MBank's original action on the notes, and that the jury verdict constitutes an affirmative defense to MBank's claim.

The judgment entered on September 26, 1985 is unaffected by this opinion and remains in full force and effect.

## ORDER

### ON MOTION TO ALTER OR AMEND

On October 7, 1985 plaintiff and counterclaim defendant MBank Fort Worth, N.A. ("MBank") filed a motion to alter or amend judgment and alternative motion for new trial. On the same day, defendants and

---

**16.** In fact, the legislature knew how to draft such a provision when it wished to do so. *See* article 5069–6.05(4) of the Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–6.05(4) (Vernon's 1985).

counterclaim plaintiffs Trans Meridian, Inc., Robert and Gale Tunnell, Itaf Daou, Ghaleb and Mary Hamadeh, Charles and Barbara Ward, and H.J. and Laiping Van Praag ("the TMI Group") filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Each side has responded to the other side's motion. After carefully considering the briefs of the parties, the record and the applicable law, the Court is of the opinion that neither motion is well founded and both should, in all respects, be denied. Nevertheless, the Court finds it necessary to address certain of the issues raised by both parties in their respective motions.

As to MBank's motion, the Court finds that MBank's claim that the TMI Group waived their right to complain of its conduct by way of affirmative defense is a point that should have been addressed in the Court's opinion rendered on September 26, 1985. Therefore, the Court will withdraw that opinion and enter a new opinion concurrently with this order for that limited purpose. However, because the Court finds that the jury's finding of waiver does not apply to the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code § 17.41 *et seq.* ("DTPA") claim, the Court will not alter the judgment entered on September 26, 1985.

As to the TMI Group's motion, it is patently false for the TMI Group to claim that this Court granted both MBank's and Sabre Exploration Company's motion for summary judgment on the TMI Group's Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") claim. Prior to trial, the Court expressly stated that it would not rule on the merits of the motion until the Supreme Court entered its decision in *Sedima v. Imrex Company, Inc.*, which it did on July 1, 1985. *See*, —— U.S. ——, 105 S.Ct. 3292, 87 L.Ed.2d 361. The Court went on to state that it would not continue the entire case until a decision in *Sedima* was reached but instead would try the case on the other theories alleged by the TMI Group. The TMI Group now claims that it is entitled to a judgment on its RICO claim based on the evidence adduced at trial and the jury's verdict. The Court disagrees. If, as the TMI Group claims, that the evidence supported a RICO verdict, then it was the TMI Group's responsibility to request jury instructions and issues on that claim. Failure to request that such instructions and issues be submitted or to object to the failure by the Court to give such instructions and issues results in a waiver of the right to have that claim submitted to a jury. *See* Fed.R.Civ.P. 49(a), 51; *see also, Molex Inc. v. Nolen*, 759 F.2d 474, 478 (5th Cir.1985). It is undisputed that the TMI Group failed to request instructions and issues on the RICO claim and to object to their omission in the Court's charge and verdict. Therefore, the Court finds that the TMI Group waived their right to have their RICO claim submitted to the jury. Furthermore, the Court is of the opinion that the TMI Group is not entitled to a new trial solely on the RICO claim.

Accordingly, the Court ORDERS that both MBank's motion and the TMI Group's motion are, in their entirety, hereby DENIED. The Court further ORDERS that the opinion dated September 26, 1985 is hereby WITHDRAWN and that a new opinion be entered concurrently with this order. The Court further ORDERS that all other relief not expressly granted is hereby DENIED. Finally, the Court ORDERS that the judgment entered on September 26, 1985 is unaffected by either this order or by the new opinion and remains in full force and effect.