753 F.2d 444
 1 Fed.R.Serv.3d 358
 FLUOR ENGINEERS AND CONSTRUCTORS, INC., Plaintiffs,
v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY, et al.,
Defendants-Cross Defendants-Appellees,
v.
NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Cross
Plaintiff-Appellant.
 No. 83-2756.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 20, 1985.
 
 Fulbright & Jaworski, Paul L. DeVerter, II, Sawnie A. McEntire, Roger Townsend, Houston, Tex., for defendant-cross plaintiff-appellant.
 Crain, Caton, James & Womble, Patricia Hair, W.T. Womble, Houston, Tex., for defendants-cross defendants-appellees.
 Tekell, Book & Matthews, Kenneth Tekell, Houston, Tex., for American Hoist & Derrick.
 Appeals from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 The Norfolk & Western Railway Company appeals from a jury's determination that it negligently caused a train derailment. Perceiving no error in the proceedings below, we affirm the district court's entry of judgment on the verdict.
 
 
 2
 * This suit arises out of a train derailment that occurred on November 30, 1975 on the Southern Pacific's San Jacinto River Bridge near Humble, Texas. The derailment was caused when a backhoe loaded on a flatcar owned by the Norfolk & Western tilted so that it hung over the side of the car and struck the truss of the bridge. The backhoe, other cargo, the railroad bridge, and various train cars sustained damages totalling over a million dollars. The tilting of the backhoe was apparently caused by a failure to lock in its movable cage when it was loaded onto the flatcar.
 
 
 3
 The backhoe was manufactured by American Hoist & Derrick Company for Fluor Engineers and was loaded onto the Norfolk & Western's flatcar by American Hoist at its facilities in Cleveland, Ohio for shipment to Fluor in Houston. The Norfolk & Western provided instructions for the loading of the car, and although these instructions suggested that the cage of the backhoe should be locked in place if a locking device was available, American Hoist failed to lock in the cage on its backhoe. The Norfolk & Western had an inspector at American Hoist's facility while the backhoe was loaded, but he apparently did not note whether the locking device had been set. Because American Hoist sealed the cage of the backhoe with plywood after loading in order to prevent its glass from breaking, the Norfolk & Western did not observe the problem when it made its final inspection upon accepting the car for shipment.
 
 
 4
 The car travelled on the Norfolk & Western's lines and the lines of two other railroads before it reached rail lines owned by the Southern Pacific, a distance of about 1,000 miles. At each interchange the railroad company assuming carriage inspected the loading of the flatcar, although the evidence was that the Southern Pacific did not make the required inspection when it accepted the car for shipment at Shreveport, Louisiana. Apparently there was at least a visual inspection of the car by employees of the Southern Pacific in Lufkin, Texas shortly before the derailment, and at that time the backhoe appeared to be properly secured. At some point in the journey between Lufkin and the San Jacinto River Bridge the cage of the backhoe broke loose from its securing cables and turned sideways causing the collision with the bridge and the derailment.
 
 
 5
 The jury found the Norfolk & Western 90% at fault in the accident, with the Southern Pacific and American Hoist at fault eight and two percent, respectively.[1] The jury found that the Norfolk & Western had been negligent in instructing American Hoist about how properly to load the backhoe and negligent in failing to inspect the loading job. American Hoist was found negligent in failing to lock in the cage of the backhoe and the Southern Pacific was found negligent in failing to adequately inspect the flatcar. Damages of over one million dollars were assessed against the Norfolk & Western, covering damages to the backhoe, cargo, the train cars and cleanup and repair of the railroad bridge. The Norfolk & Western appeals the verdict on a number of grounds.
 
 II
 
 6
 At the outset we must address a problem of limitations. The Norfolk & Western argues that the Southern Pacific's cross-action is time-barred by TEX.REV.CIV.STAT.ANN. art. 5526 (Vernon Supp.1984), the provision governing limitations in negligence actions for injury or damage to property.[2] The facts surrounding the controversy are not disputed. The statute commenced running on November 30, 1975, the date of the train derailment, and on November 1, 1977, twenty-nine days before limitations ran, Fluor filed its original complaint naming the Southern Pacific and American Hoist as defendants. Fluor amended its complaint to add the Norfolk & Western as a defendant on November 15, and served the Norfolk & Western with this complaint and a summons pursuant to Fed.R.Civ.P. 4. The Southern Pacific filed its answer to Fluor's complaint on November 18 and in this same pleading asserted its cross-claim against the Norfolk & Western. The cross-claim was not served on the Norfolk & Western with a Rule 4 summons, but twenty days later, on December 8, 1977, and eight days after limitations expired, the Southern Pacific hand delivered a copy of its answer and cross-claim to the Norfolk & Western's attorney. The Norfolk & Western, having obtained an extension of time from Fluor's attorney, filed its answer to Fluor's complaint on March 8, 1978 but did not respond to the Southern Pacific's cross-claim.
 
 
 7
 Limited discovery ensued over the next two years, although none relating directly to the claims in the Southern Pacific's cross-action. Thus it was not until January of 1980, when counsel for the Southern Pacific inquired about the Norfolk & Western's failure to file an answer to the cross-claim, that the Southern Pacific learned that the Norfolk & Western considered the December 1977 service insufficient and intended to rely on limitations as a defense to that claim. The Southern Pacific then re-served the Norfolk & Western with a copy of its answer and cross-action, this time accompanied by a summons. The Norfolk & Western promptly moved to dismiss based on limitations, and the district court denied the motion, holding that although the initial in-hand service on the Norfolk & Western's attorney may have been insufficient under the requirements of Fed.R.Civ.P. 5(a),[3] the pleading and summons served on the Norfolk & Western in February 1980 amended any defects in service pursuant to Fed.R.Civ.P. 4(h).[4]
 
 
 8
 The Norfolk & Western argues on appeal that the initial in-hand service of the cross-claim by counsel for the Southern Pacific was not sufficient under Rule 5(a) and could not have been amended under Rule 4(h) because the initial service was itself untimely. We address the timeliness issue first because if limitations expired on November 30, 1977, then none of the Southern Pacific's attempts at service were effective.
 
 
 9
 Resolution of the timeliness problem here turns on the applicability of the doctrine of tolling to the Southern Pacific's cross-claim. Because this cross-action was a pendent state law claim, the issue is governed by Texas law. Walker v. Armco Steel Corp., 446 U.S. 740, 750-51, 100 S.Ct. 1978, 1985-86, 64 L.Ed.2d 659 (1980); Calhoun v. Ford, 625 F.2d 576, 577 (5th Cir.1980). Our task is aided by a statutory provision which extends the limitations deadline here. Article 5539c, TEX.REV.CIV.STAT.ANN. (Vernon Supp.1984), provides as follows:
 
 
 10
 Counterclaims and cross-claims; period of limitation; extension.
 
 
 11
 In the event a pleading asserting a cause of action is filed under circumstances where at the date when answer thereto is required by law a counterclaim or cross-claim would otherwise be barred by the applicable statute of limitation, then the party so answering may, within 30 days following such answer date file a counterclaim or cross-claim in such cause and the period of limitation is hereby extended for such period of time provided that the counterclaim or cross-claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim.
 
 
 12
 The statute was intended to operate in cases such as ours where the plaintiff waited to file his complaint at or near the date on which limitations expired, thereby subjecting the defending party to a limitations bar when he sought to assert counterclaims or cross-actions in his answer. See Hobbs Trailers v. J.T. Arnett Grain Co., 560 S.W.2d 85, 88-89 (Tex.1978).
 
 
 13
 The test for applicability of the statute is two-fold. First, the counterclaim or cross-action must arise out of the same transaction or occurrence as the plaintiff's claim. Second, the deadline for filing the answer in which the counterclaim or cross-action is to be asserted must expire outside of the normal limitations period. We conclude that the Southern Pacific's cross-action met both tests and that limitations did not run on its claim until January 5, 1978[5] twenty-seven days after the Southern Pacific's first attempt at service on the Norfolk & Western. The claims asserted in the cross-action arose out of the same transaction or occurrence as Fluor's suit, and the Southern Pacific's answer to the amended complaint was not due until December 5, 1977--nearly a week after limitations would otherwise have expired. Its cross-action thus falls easily within the literal reach of Article 5539c. We find no indication in the limited number of decisions construing that provision that would lead us to any other conclusion.[6]
 
 
 14
 The Norfolk & Western contends, however, that the in-hand service made on December 8, 1977, even if timely, was not effective because it was not accompanied by a summons. We agree that until the Norfolk & Western actually appeared in the lawsuit, the Southern Pacific should have served its cross-action along with a summons pursuant to Fed.R.Civ.P. 4,[7] but we think the district court correctly determined that the service of December 8, 1977 was properly amended when the Southern Pacific re-served the Norfolk & Western with a summons and copy of the cross-action in February 1980.
 
 
 15
 Federal Rule of Civil Procedure 4(h) permits the court, in its discretion, to allow any process or proof of process to be amended. The rule has been read by courts in a manner that effectuates its function of timely notice without creating technical traps for the unwary, that is, technical in the sense that the purpose of the rule is not served. See, e.g., Great Plains Crop Management, Inc. v. Tryco Manufacturing Co., 554 F.Supp. 1025, 1028 (D.Mont.1983) (amendment permitted under Rule 4(h) where sole defect in plaintiff's service on defendant was failure to set out in the summons the time for answer). The issuance of a summons to cure a defect in process has been held to be within the scope of the rule. See Smith v. Boyer, 442 F.Supp. 62 (W.D.N.Y.1977); Wieland v. Wickard, 4 F.R.D. 250 (E.D.Wis.1945). Although the court should not permit amendment if "material prejudice would result to the substantial rights of the party against whom the process issued," Fed.R.Civ.P. 4(h), these concerns are not implicated where the defendant has actual notice of the claim being asserted against him and the facts upon which the claim is based. Smith v. Boyer, 442 F.Supp. at 63-64.
 
 
 16
 Here notice problems are absent because the Norfolk & Western appeared in the action after defective service of the cross-action knowing that such a claim was being asserted against it. While the discovery made before the Norfolk & Western was re-served in 1980 related to Fluor's original complaint rather than the cross-action, all of these claims arose out of the same transaction, and there is no indication that the amendment of process in any way prejudiced the Norfolk & Western's ability to defend the cross-action. We hold that the process of December 8, 1977, which was timely but defective, was properly amended under Rule 4(h) by the new service in February 1980.
 
 III
 
 17
 The Norfolk & Western's principal contention on appeal is that the district court had no jurisdiction to proceed with a trial on the merits of the case. The railroad argues that various agreements between it and the Southern Pacific as members of the Association of American Railroads place responsibility for the accident with the Southern Pacific and that liability for the resulting damages is to be determined exclusively under certain arbitration proceedings sponsored by the AAR. The Norfolk & Western also argues that since these rules place responsibility for the accident on the Southern Pacific, it is responsible as well for the other damages resulting from the derailment--specifically the railroad bridge and cleanup damages--although such matters are not expressly covered by the rules.[8]
 
 
 18
 In January of 1981 the district court stayed proceedings on damages to the cars and cargo and allowed the Norfolk & Western to seek arbitration on those matters before the AAR. The Norfolk & Western instituted a proceeding before the Mechanical Division of the AAR, the body responsible for arbitrating disputes between AAR members over car damages. Because the Southern Pacific declined to participate in this proceeding, the arbitration was conducted ex parte. The Mechanical Division opined that the Southern Pacific was responsible for all car damages arising out of the derailment but did not address responsibility for cargo damages, explaining that such matters are within the jurisdiction of another body of the association--the AAR Freight Claims Division. The Norfolk & Western then attempted to arbitrate before that body the issue of responsibility for the cargo damages, but the Freight Claims Division refused to decide the question because the case was not in a procedural posture whereby the Norfolk & Western could initiate arbitration.[9]
 
 
 19
 The Norfolk & Western argued in the district court that the matter of damages to train cars had been conclusively decided in a binding arbitration proceeding and that the award against the Southern Pacific should therefore be confirmed. The railroad also urged that proceedings on the freight claims should remain stayed until they could be arbitrated and that because the AAR rules clearly placed responsibility for the derailment on the Southern Pacific, the remaining issues in the case should be determined in favor of the Norfolk & Western as a matter of contract law. The Southern Pacific responded that the AAR rules and arbitration proceedings had no binding effect on the dispute before the court because those rules governed responsibility for damages suffered by owners of cars and cargo only as between the owners and the handling line, and had no application to indemnity-type suits such as the Southern Pacific's cross-action against the Norfolk & Western. The district court apparently agreed with the Southern Pacific and proceeded to trial on all damage claims--those to train cars, cargo, the railroad bridge, and cleanup costs. On appeal the Norfolk & Western persists in its construction of the AAR rules and arbitration procedures. While its arguments are not without force, as we read the AAR rules and arbitration procedures, the Southern Pacific's proffered interpretation is the more plausible, and we adopt it.
 
 
 20
 Our task in determining the effect of the AAR rules and procedures is complicated by a dearth of authority construing them, but what limited precedent there is supports our result. On at least one occasion this court has given effect to efforts of railroads to displace by agreement liability for negligence. Alabama Great Southern R.R. Co. v. Louisville & Nashville R.R. Co., 127 F.Supp. 363, 369-71 (N.D.Ala.1955), rev'd on other grounds, 224 F.2d 1, 4 (5th Cir.1955) (enforcing detour agreement that shifted responsibility for derailment from home railroad to foreign railroad where accident was caused by home railroad's negligence). Accord Chicago Rock Island & Pacific R.R. Co. v. Chicago, Burlington & Quincy R.R. Co., 301 F.Supp. 72, 76-78 (N.D.Ill.1969), aff'd, 437 F.2d 6 (7th Cir.), cert. denied, 402 U.S. 996, 91 S.Ct. 2173, 29 L.Ed.2d 161 (1971). The detour agreement in the Alabama Great Southern case, however, unambiguously shifted responsibility for the negligent conduct at issue. By contrast, other courts have given a more limited effect to at least some of the rules that the Norfolk & Western argues preclude the Southern Pacific's cross-action here. See, e.g., Chicago, Rock Island & Pacific R.R. Co. v. Chicago & North Western Ry. Co., 280 F.2d 110, 113-14 (8th Cir.1960), cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961) (Car Service Rule 7 and Interchange Rules were "solely designed to govern the care and maintenance of cars belonging to one carrier while in possession of another" and did not preclude action by one railroad against another for contribution and indemnity where plaintiff railroad settled a claim by its employee who was injured on defendant's train car while it was located on plaintiff railroad's transfer track); Maine Central R.R. Co. v. Bangor & Aroostook R.R. Co., 395 A.2d 1107 (Me.1978) (arbitration of responsibility for train car damages which held plaintiff railroad liable for derailment as handling carrier did not preclude products liability action by the carrier against train car owner who modified the design of the train car that allegedly caused the derailment).
 
 
 21
 As we read the Interchange Rules and the arbitration decision of the AAR's Mechanical Division, the proceeding that determined responsibility for train car damages determined that the Southern Pacific was responsible for train car damage only as against the owners of the damaged cars. If the Norfolk & Western flatcar that caused the derailment had been damaged in the accident, for example, the Southern Pacific as handling carrier would have been irrevocably bound by the arbitrator's decision to pay for those damages, just as it was bound to pay the owners of other cars damaged in the derailment for their losses. The Interchange Rules and arbitration decision simply do not address indemnity claims for such damages against third parties, even where the third party is a member railroad. Thus the Southern Pacific was entitled to sue the Norfolk & Western for the damages it paid to the owners of train cars damaged in the derailment.
 
 
 22
 The Norfolk & Western's arguments about the binding effect of the Southern Pacific's agreement to arbitrate freight claims are also without merit. The district court stayed proceedings on the freight claims until the arbitrators determined that those claims were not procedurally arbitrable. Our cases require no more. See Commerce Park at DFW Freeport v. Mardian Construction Co., 729 F.2d 334, 339 n. 5 (5th Cir.1984) (matters of procedural arbitrability are for arbitrator to decide). Once the arbitrators made such a determination, the district court was entitled to proceed. The Norfolk & Western argues that we should not let the Southern Pacific escape arbitration on the freight claims simply because the rules create a procedural glitch whereby arbitration could be instituted only at the Southern Pacific's behest.[10] Such an argument proves too much, however, for it demonstrates that the Norfolk & Western's "right" to arbitrate these claims is not unqualified but rather is limited by the rules that define the arbitration procedures.[11]
 
 
 23
 Finally, we think the rules and arbitration procedures have no effect on responsibility for damages to the railroad bridge and costs of cleanup. First, such damages are nowhere covered in any AAR rules or arbitration procedures. Second, the arbitration procedures that exist are based on agreed statements of fact--they are not intended to resolve disputed questions. Moreover, to the extent that the procedures do govern responsibility, they do not do so on the basis of fault but rather on the basis of the railroads' status as handling or delivering carriers and their compliance with delivery, acceptance, and disclaimer procedures. Such matters have little or no bearing on the issue of negligence, and in the absence of any reference to such damages in the AAR rules, we decline to give them the broad res judicata effect urged by the Norfolk & Western. We hold that the district court was correct in proceeding to trial on all damage issues.[12]IV
 
 
 24
 The Norfolk & Western also argues on appeal that the district court erred in admitting certain testimony regarding the railroad's duty to inspect the improperly loaded flatcar when it was tendered for shipment by American Hoist. Specifically, the Norfolk & Western asserts that because American Hoist shipped the backhoe under a bill of lading that contained the terms "Shipper's Load--Weight and Count," the Norfolk & Western's only duty of inspection was to discover patent defects in the loaded car when it was tendered for shipment by American Hoist. It could not have breached that duty, the railroad argues, when American Hoist's failure to lock in the cage of the backhoe was undetectable, the cage having been covered with plywood before the car was tendered for shipment.
 
 
 25
 We conclude that the bill of lading did not so completely absolve the Norfolk & Western of responsibility for inspecting the car as it suggests. Inclusion of the terms "shipper's load, weight, count, and seal" in a bill of lading, or words to like effect, operates only to shift the burden of proof in suits for lading damages, and has no bearing on the carrier's duty of inspection.[13] In all cases where the shipper has been shown to have negligently loaded his shipment, the carrier's duty to discover the problem is the same: it is limited to discovery of defects that are patent or apparent upon reasonable inspection. See, e.g., American Foreign Insurance Association v. Seatrain Lines of Puerto Rico, 689 F.2d 295, 300 (1st Cir.1982). Where the carrier is put on notice of a potential loading problem, however, this duty of limited inspection includes a duty to discover even those defects that may be latent. Masonite Corp. v. Norfolk & Western Ry. Co., 601 F.2d 724 (4th Cir.1979).[14]
 
 
 26
 We conclude that this latter aspect of the duty of inspection was triggered here by evidence that the Norfolk & Western had notice of the potential loading problem in this case. First, although the Norfolk & Western may not have been under a duty to provide an inspector to assist American Hoist in loading the backhoe, the railroad sent its inspector, John Mate, to American Hoist's facilities to observe the loading job before the railroad made its formal inspection of the car. Mate admitted that he typically checked to see whether the locking device was in place on backhoes when they were loaded for shipment and that he did not recall whether or not he had checked the backhoe at issue in this case. Nor is this the only evidence that the Norfolk & Western had notice of a potential loading problem; we think the same conclusion follows from the jury's finding that the Norfolk & Western was negligent in providing American Hoist with an inadequate loading plan for safely loading the backhoe. In short, we think that the jury was entitled to conclude that the Norfolk & Western had been put on notice of the possibility that American Hoist had not properly loaded the train car and that its duty of inspection therefore extended beyond discovery of patent or obvious defects in loading. The Norfolk & Western's complaints on this issue are therefore without merit.
 
 V
 
 27
 The Norfolk & Western also asserts that the district court erred in permitting the Southern Pacific to prove as its damages the cost of replacing the San Jacinto River Bridge. Under Texas law the measure of damages to the bridge is the cost of restoring it to the condition it was in immediately before the accident. See, e.g., Stafford v. Thornton, 420 S.W.2d 153, 159 (Tex.Civ.App.--Amarillo 1967, writ ref'd n.r.e.). The evidence at trial, aside from the Southern Pacific's initial estimate to repair the bridge, was the amount the Southern Pacific spent to replace it. The replacement bridge was apparently substantially different from the old bridge, and the Norfolk & Western argues that therefore the Southern Pacific failed properly to prove up its damages.
 
 
 28
 We disagree. Although the replacement bridge was fundamentally different from the old one, there was testimony that the cost of replicating the old structure would have exceeded the cost of a new bridge. Therefore the jury could have properly awarded that amount in damages. The Norfolk & Western's complaint on this ground is misplaced.
 
 VI
 
 29
 The Norfolk & Western's final challenge to the judgment below is that the Southern Pacific was allowed to introduce testimony at trial that circumvented its admissions under Fed.R.Civ.P. 36 and that the district court should have instructed the jury on the binding effect of admissions. Specifically, the Southern Pacific admitted in response to a request for admission that its train was carrying logs and was travelling at 40 m.p.h. at the time of the derailment. The Norfolk & Western hoped to use these admissions, along with the Southern Pacific's internal rules that required trains carrying logs to travel at no more than 15 m.p.h. when crossing truss bridges, to demonstrate to the jury that the Southern Pacific's train was travelling at an excessive speed at the time of the accident. At trial the Southern Pacific was allowed to offer testimony that the "logs" referred to in the speed restriction in its rules were logs two feet in diameter and between 50 and 75 feet long. It also offered testimony that the "logs" being carried at the time of the derailment were short sticks of pulpwood four to five feet long. The district court refused to instruct the jury on the binding effect of admissions.
 
 
 30
 The drawn distinction has a fanciful ring, but we are not prepared to conclude that the district court was without its discretion in admitting the evidence. The disputed testimony arguably did not contradict the Southern Pacific's admissions but rather explained the meaning of its rules. We decline to overturn the district court's conclusion that the testimony concerning the meaning of "logs" was consistent with the Southern Pacific's prior admissions under Fed.R.Civ.P. 36.
 
 
 31
 Having considered the points of error raised by the Norfolk & Western and finding them to be without merit, we AFFIRM the decision of the district court.
 
 
 
 [1]
 Fluor sued the Southern Pacific, American Hoist and the Norfolk & Western for the damages to its backhoe. The Southern Pacific cross-claimed against the Norfolk & Western and American Hoist for Fluor's damages and for all other damages arising out of the accident, alleging that those entities were responsible for the derailment and requesting full indemnity. The Norfolk & Western and American Hoist in turn filed similar cross-actions against their respective co-defendants
 Fluor settled its claims before trial and did not thereafter participate in the case. The Southern Pacific and American Hoist subsequently entered into a Mary Carter agreement, thus both those parties were aligned against the Norfolk & Western at trial.
 
 
 [2]
 Article 5526 provides in part:
 There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: 1. Actions of trespass for injury done to the estate or property of another.
 
 
 [3]
 Rule 5(a) provides in part:
 Service: When Required. Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.
 
 
 [4]
 Rule 4(h) provides:
 Amendment. At any time in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued.
 
 
 [5]
 Fluor filed its amended complaint on November 15, giving the Southern Pacific 20 days, or until December 5, to file its answer. See Fed.R.Civ.P. 15(a). Adding 30 days to this deadline, as provided in Article 5539c, the new limitations deadline for cross-actions was January 5, 1978
 
 
 [6]
 Even if Article 5539c did not toll limitations, we think that the equitable doctrine of tolling under Texas law extended the limitations deadline here. A plaintiff does not "commence and prosecute" his suit within the meaning of Article 5526 when he files his complaint unless he also serves the defendant within the limitations period, but where suit is filed before limitations runs, the deadline for service is tolled so long as the plaintiff makes duly diligent efforts to obtain service of process. Zale Corp. v. Rosenbaum, 520 S.W.2d 889, 890 (Tex.1975). Due diligence is, of course, a question of fact. Id. at 891
 Here the district court resolved that factual issue in favor of the Southern Pacific when it overruled the Norfolk & Western's motion to dismiss, stating: "Under the unique facts of this case ... the Court cannot say that delivery of process only eight days after limitations had run was unreasonable." We are not prepared to hold that this factual determination was clearly erroneous.
 
 
 [7]
 The Southern Pacific contends that it could properly effect service on the Norfolk & Western pursuant to Fed.R.Civ.P. 5(a) by handing its attorney a copy of the cross-action since the Norfolk & Western had already been subjected to the jurisdiction of the district court when Fluor served the Norfolk & Western with the amended original complaint and a summons. The Norfolk & Western responds that since it had not yet appeared in the action, service of the cross-claim against it was insufficient unless accompanied by a summons
 We find no authority directly on point, but we agree with the Norfolk & Western's suggestion that Rule 5(a) service is proper only after a party has appeared in an action. The purpose of the rule, to facilitate the pleadings process by permitting service on attorneys of record rather than the individual litigants once the parties are before the court, cannot be fulfilled until a litigant has appeared and established an attorney of record. We note that the rule requires service of "new or additional claims for relief" asserted against parties in default for failure to appear to be accompanied by a Rule 4 summons. Parties who have not yet appeared to defend an action ought to be afforded the same notice for new or additional claims such as the cross-claim asserted here by the Southern Pacific against the Norfolk & Western.
 
 
 [8]
 The rules on which the Norfolk & Western relies are promulgated by various divisions of the AAR and vary somewhat in the procedures used to enforce them. The first set of rules at issue is the Interchange Rules (Field Manual) of the AAR, which include the following:
 Rule 89(G)(8): After a car has been accepted by the inspector of the receiving road, delivering road is relieved from responsibility for damage to cars and contents.
 Rule 95(A)(1)(a): [Handling line is responsible for damage] or loss to any car, regardless of extent unless otherwise stated in this Section, resulting from unfair usage conditions outlined below.... (6) Derailment.
 The Interchange Rules (Office Manual) of the AAR govern arbitration of any disputes under these rules.
 Norfolk also urges that Rule 7 of the AAR Code of the Car Service Rules is relevant to this dispute. That rule provides in part that "the receiving railroad shall be responsible for the cars, contents and car hire after receipt of the proper data for forwarding...." Disputes under the Car Service Rules are to be arbitrated exclusively by the Operating Transportation Division of the AAR pursuant to Car Service Rule 17.
 Lastly Norfolk points out that Rule of Order VIII(4) of the Freight Claims Division of the AAR provides for arbitration of disputes between AAR members under the AAR Freight Claims Rules, although the railroad points to no particular Freight Claims Rule as applicable to this dispute. Rule of Order VIII(4) sets the following limit on arbitrability of freight claims:
 (a) All claims must be paid before they are submitted for statement or arbitration and must be submitted by the paying carrier ... except ... when an interested member carrier accepts charge from another [provided that] arbitration proceedings are commenced within eighteen (18) months from the date debit is received by the debited carrier.
 
 
 [9]
 Under Rule of Order VIII(4) of the Freight Claims division, only carriers that have already paid disputed freight claims may institute arbitration. The sole exception to this limitation which would have permitted the Norfolk & Western to institute such proceedings was never triggered because the Southern Pacific chose not to bill the Norfolk & Western under the railroad interline accounts for the lading claims the Southern Pacific had paid to the owners of the damaged cargo. See supra n. 8 for the text of Rule of Order VIII(4)(a)
 
 
 [10]
 See supra note 9
 
 
 [11]
 Similarly the Norfolk & Western's arguments that Interchange Rule 89(G)(8) and Car Service Rule 7 somehow create liability for the cargo damages are also without merit. Those rules provide that any disputes about their meaning are to be arbitrated by the AAR Mechanical Division and the AAR Operating-Transportation Division respectively. The Mechanical Division has expressly declined any authority over cargo matters, and the Norfolk & Western has never invoked arbitration before the O-T Division pursuant to Car Service Rule 17, the provision that defines the procedures for arbitrating disputes under the Car Service Rules. Thus the Norfolk & Western has failed to trigger any of the agreement provisions which might entitle it to avoid litigation over responsibility for the accident under common law principles
 
 
 [12]
 Our resolution of this arbitration issue effectively disposes of a related contention by the Norfolk & Western; that the district court erred in refusing to apprise the jury of the disputed railroad rules. In light of our conclusions about their scope and effect, we agree with the district court that the AAR rules were properly excluded from evidence as not relevant on the issue of negligence
 
 
 [13]
 In suits between shippers and carriers for lading damages, the Carmack amendment, 49 U.S.C. Sec. 20(11), effectively provides that in order to escape liability the carrier must prove that "the damage was occasioned by the shipper, Act of God, the public enemy, public authority or the inherent vice or nature of the commodity." Federated Department Stores v. Brinke, 450 F.2d 1223, 1226 (5th Cir.1971). Pursuant to 49 U.S.C. Sec. 101, inclusion of the "shipper's load, weight, count, and seal" language in the bill of lading, or words to like effect, removes this burden from the carrier and shifts the burden to the shipper to show that his goods were loaded properly. See, e.g., id.; Dublin Co. v. Ryder Truck Lines, 417 F.2d 777, 778 (5th Cir.1969). If the shipper cannot prove that he loaded his shipment correctly, he may recover from the carrier only after demonstrating that an independent act of negligence on the part of the carrier contributed to the damage
 We find no authority to support the Norfolk & Western's suggestion that in addition to shifting this burden of proof, the terms included in its bill of lading also altered its duty of inspection. American Hoist effectively met its burden by proving to the jury that the Norfolk & Western was guilty of an independent act of negligence in failing to provide an adequate plan for safely loading the backhoe. As we shall explain, given this finding and in light of other evidence, the Norfolk & Western's duty of inspection extended beyond discovery of patent loading defects.
 
 
 [14]
 In Masonite the Norfolk & Western had previously received improperly loaded shipments of plywood from Masonite Corporation. The loading defect was inadequate bracing of the containers shipped, a defect not apparent from ordinary inspection, but the Norfolk & Western was alerted to the problem when the load shifted in a car carrying Masonite's plywood and nearly caused a derailment. The railroad informed Masonite that all future cargos of its plywood would have to be submitted for a special inspection. When Masonite failed to present similarly loaded cars for the inspection before tendering them for shipment, the Norfolk & Western nevertheless accepted the cars and a derailment resulted because of the same loading problem. The Fourth Circuit rejected the Norfolk & Western's arguments that it was not at fault for failing to discover the problem although the loading defect was latent. The court concluded that the Norfolk & Western's prior experience with Masonite should have put the railroad on notice of the need to make a more detailed inspection of the cargo