**MBANK FORT WORTH, N.A. (formerly Continental National Bank of Fort Worth), Plaintiff-Appellant, Cross-Appellee,**

v.

**TRANS MERIDIAN, INC.,**
**Defendant-Appellee,**
**Cross-Appellant.**

**TRANS MERIDIAN, INC., Robert G. Tunnell, Gale Tunnell, Itaf Daod, Ghaleb A. Hamadeh, Mary Hamadeh, Charles R. Ward, Barbara Ward, H.J. Van Praag, and Laiping F. Van Praag, Counterclaim Plaintiffs-Appellees Cross-Appellants,**

v.

**MBANK FORT WORTH, N.A. (formerly Continental National Bank of Fort Worth), Counterclaim Defendant-Appellant Cross-Appellee.**

No. 86–1044.

United States Court of Appeals,
Fifth Circuit.

July 2, 1987.

McDonald, Sanders, Ginsburg, Maddox, Newkirk & Day, John H. Cayce, Jr., Sam J. Day, Constance R. Heiland, Fort Worth, Tex., for MBank.

Chappell & Handy, David F. Chappell, Kathleen J. Miller, Fort Worth, Tex., for Trans Meridian, Inc., et al.

Before CLARK, Chief Judge, BROWN and JOLLY, Circuit Judges.

CLARK, Chief Judge:

MBank-Fort Worth ("MBank") appeals the district court's entry of a take-nothing judgment on its claim against Trans Meridian, Inc. and several individual defendants (collectively known as "TMI") for the balance due on two promissory notes. TMI cross-appeals the entry of a take-nothing judgment on its counterclaims against MBank and Sabre Exploration Corporation ("Sabre") under federal and state securities laws, common law fraud, the Texas Deceptive Trade Practices Act ("DTPA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). We affirm in part but reverse that part of the district court's

judgment holding that TMI did not waive its right to assert the DTPA as a defense to MBank's recovery on the notes and reverse and remand for a new trial that part of the district court's judgment denying relief on TMI's counterclaim under the Texas Securities Act.

## I. *Background*

This case arose from TMI's investment in an oil and gas drilling venture conducted by Sabre. TMI and Sabre executed a Drilling and Participating Agreement on August 1, 1980. The Agreement obligated TMI to finance the drilling operations in exchange for a share of the proceeds and an interest in oil and gas leases in the South Hamel field in Colorado County, Texas. At the time the agreement was executed, Sabre was already indebted to MBank. MBank released its first lien on Sabre's interests in the South Hamel field so that TMI could obtain unencumbered interests.

In December 1980 MBank loaned TMI $500,000, and made a second $500,000 loan to TMI in July 1981. TMI pledged its interest in the South Hamel field as security for the loans. TMI defaulted on the loans and MBank filed suit in December 1982 to collect the unpaid balances and foreclose on the oil and gas properties securing the loans.

TMI removed the suit to federal court and then brought counterclaims against MBank and Sabre asserting they had induced TMI to invest in the project by fraudulent misrepresentations and omissions. The counterclaims included: 1) common law fraud; 2) statutory fraud under Texas law; 3) negligent misrepresentation; 4) the federal Securities Acts of 1933 and 1934; 5) the Texas Securities Act; 6) breach of contract; 7) the Texas Deceptive Trade Practices Act; and 8) RICO. MBank and Sabre asserted that the DTPA did not apply to this case; the statute of limitations barred the counterclaims; TMI was contributorily negligent; TMI concealed material facts; and TMI waived any right to complain of MBank and Sabre's conduct.

The jury was given fifty-four pages of instructions by the court and the verdict consisted of eighty special interrogatories. The interrogatories were grouped according to each counterclaim and each defense.

The jury found that MBank negligently misrepresented material facts but that TMI was 90% contributorily negligent. The jury also found that both MBank and Sabre violated the DTPA and that Sabre violated the Securities Act of 1933. The jury found that TMI waived its right to complain of the conduct of Sabre and MBank and that TMI failed to exercise due diligence to discover the misrepresentations or omissions. The jury nonetheless awarded actual damages to each member of the TMI group and assessed punitive damages against Sabre.

The district court held that the defenses of waiver and failure to exercise due diligence barred TMI from recovery on its claims of negligent misrepresentation and of violations of the Securities Act of 1933. The district court held that the statute of limitations barred TMI from an affirmative recovery on its DTPA claim but did not bar use of the DTPA as a defense to MBank's recovery on the loans. The district court reconciled these verdicts by rendering a take-nothing judgment against all parties.

MBank filed a motion to alter or amend the judgment or for a new trial. In response, the district court amended its original judgment to expressly reflect that waiver did not apply to the DTPA defense. TMI filed a motion for judgment notwithstanding the verdict or a new trial on its RICO, Texas Securities Act and statutory fraud claims. The district court denied the motion. MBank and TMI appealed. Sabre did not participate in the appeal.

## II. *Application of the Texas Deceptive Trade Practices Act*

■ The first issue we must resolve is whether the DTPA applies to the facts in this case. The DTPA applies to "goods," defined as "tangible chattels or real property purchased or leased for use," [1] and to "services," defined as "work, labor, or ser-

---

1. Tex. Business & Commerce Code Ann. § 17.-   45(1) (1987).

vice purchased or leased for use."[2] MBank asserts the DTPA does not apply to this case because TMI's investment was a security transaction, and the Texas courts have held that securities are not "goods" under the DTPA. *See, e.g., Portland Savings & Loan Assoc. v. Bevill, Bresler & Shulman Government Securities, Inc.,* 619 S.W.2d 241, 245 (Tex.Civ.App.—Corpus Christi 1981). MBank asserts that the agreement must be a security transaction under the DTPA because the district court held it was a security transaction for the purposes of the federal and state securities laws.

The transaction in this case can qualify as a security transaction under the securities laws, and as a transaction in goods or services under the DTPA. *See Vick v. George,* 671 S.W.2d 541 (Tex.App.—San Antonio 1983), *rev'd on other grounds, George v. Vick,* 686 S.W.2d 99 (Tex.1984) (per curiam) (allowing claims arising from the sale of oil and gas leases to be brought under both the securities laws and the DTPA). TMI acquired an interest in real property when it acquired interests in the oil and gas leases. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex. 1982). Therefore, the transaction is covered by the DTPA.

MBank then asserts that it is not subject to the DTPA because it was not the seller of the "goods," rather it was only the lender of money used for their purchase. The Texas Supreme Court has held that a lender is liable under the DTPA if the borrower's objective for the loan is the purchase of goods or services. *La Sara Grain v. First Nat. Bank of Mercedes,* 673

S.W.2d 558, 566 (Tex.1984). In *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex.1983), the lender was liable under the DTPA because the borrower's purpose in obtaining the loan was the purchase of a house. Clearly this rule brings MBank within the coverage of the DTPA. The principal objective of TMI in borrowing the money from MBank was to buy a "good," i.e., interest in an oil and gas lease.[3]

The jury in this case found that MBank failed to disclose Sabre's poor loan history with MBank and that the information was material and was relied upon by TMI. The evidence shows that MBank's information regarding Sabre was an integral part of the loan transaction and indeed was a significant factor in the sale of a "good" that brings MBank within the coverage of DTPA.

### III. *Statute of Limitations*

■ The district court held that TMI's DTPA counterclaim was barred by the statute of limitations.[4] The jury found that TMI did discover or should have discovered MBank's deceptive acts on or before January 9, 1981. TMI's first Answer, which did not contain the DTPA counterclaim, was filed January 10, 1983. It was, therefore, one day late under the DTPA's two year statute of limitations. TMI's Amended Answer, which included the DTPA claim, was filed January 10, 1984.

TMI correctly asserts that Texas Civil Practice and Remedies Code § 16.068[5] would permit the amended answer to relate back if the original answer were timely.[6]

---

**2.** Tex. Business & Commerce Code Ann. § 17.-45(2) (1987).

**3.** Because it is clear that a principal objective of TMI in borrowing the money from MBank was to purchase a "good," we need not address the question of whether TMI was the purchaser of a service from MBank.

**4.** § 17.56A. **Limitation**

All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered

the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action. Tex. Business & Commerce Code Ann. (1987).

**5.** Formerly Vernon's Ann.Civ.St. art. 5539b.

**6.** § 16.068. **Amended and Supplemental Pleadings**

If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is

TMI asserts that the original answer should be considered timely under Texas Civil Practice & Remedies Code § 16.069,[7] which allows a counterclaim that would otherwise be barred by limitations to be filed "not later than the 30th day after the date on which the party's answer is required."[8] Under TMI's analysis, the statute of limitations would be extended to make the original answer timely and the amended answer would then relate back under § 16.068.

The effect of this analysis is to give TMI an additional year to file its counterclaim, rather than an additional 30 days. This cannot be a correct interpretation of Texas law. The DTPA was amended in 1979 to include the two year statute of limitations. Although the Texas courts have applied § 16.068 to allow the inclusion of DTPA claims in amended pleadings when the original pleading was timely, *see e.g., Aetna Casualty & Surety Co. v. Martin Surgical Supply Co.*, 689 S.W.2d 263, 272 (Tex.App. 1 Dist.1985), no Texas court has applied § 16.069 to a DTPA counterclaim, let alone allowed a party to piggy-back the two provisions to effectively extend the limitations period for a year.

Section 16.069 was clearly designed to prevent plaintiffs from waiting to file their claims until the statute of limitations had run on the defendant's potential counterclaims. *Fluor Engineers & Constructors, Inc. v. Southern Pacific Transportation Co.*, 753 F.2d 444, 448 (5th Cir.1985). It gave defendants a 30 day window in which to file those counterclaims. It did not give them any more than 30 days. We affirm the district court's holding that TMI's DTPA counterclaim is barred by the statute of limitations.

■ The district court held that TMI could still assert the DTPA as a defense to MBank's claim, even though the statute of limitations barred its affirmative DTPA claim. The Texas courts allow claims for recoupment in defense of creditors' claims even when a defendant's affirmative claim is barred by limitations. *Bodovsky v. Texoma National Bank of Sherman*, 584 S.W.2d 868, 874 (Tex.Civ.App.1979). In an analogous context to this case, Texas courts consider counterclaims brought under the Truth in Lending Act ("TILA") to be claims for recoupment which can be asserted defensively even when an affirmative claim is barred by limitations. *Callaway v. East Texas Government Credit Union*, 619 S.W.2d 411, 416 (Tex.Civ.App. 1981); *Garza v. Allied Finance Co.*, 566 S.W.2d 57, 63 (Tex.Civ.App.1978).

A counterclaim under the DTPA is similar to a counterclaim under the TILA. Both are statutory causes of action designed to deter deceptive practices by compensating consumers for their actual damages. Neither statute directly vitiates the contract as does a claim of common law fraud.[9] A number of courts have therefore differed with Texas and have held that a TILA counterclaim is not inherently defensive, but is barred by limitations when asserted as a defense. *See, In re Smith*, 737 F.2d 1549, 1552–54 (citing cases) (11th Cir. 1984). We are bound, however, to act in this diversity case as we believe the Texas Supreme Court would act. Given the similarity of the TILA and the DTPA statutes, we believe the Texas Supreme Court would allow the DTPA to be used as a defense to

---

not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence. Tex. Civil Practice & Remedies Code Ann. (1987).

**7.** Formerly Vernon's Ann.Civ.Stat. art. 5539c.

**8.** **§ 16.069. Counterclaim or Cross Claim**
    (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the

basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.
    (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required. Tex. Civil Practice & Remedies Code Ann. (1987).

**9.** We note, however, that the Truth in Lending Act explicitly provides for its use as defense to a creditor's claim. 15 U.S.C. § 1640(h) (1982).

a creditor's claim even when an affirmative claim is barred by limitations. We therefore affirm the district court's holding that TMI's defensive use of the DTPA is not barred by limitations.

## IV. *Waiver*

■ Having found that TMI's affirmative claim under the DTPA is barred by limitations, we need not reach the issue of whether it is also barred because TMI's conduct constituted a waiver of the claim. We must consider, however, whether TMI has waived its right to assert the DTPA as a defense to MBank's recovery on the promissory notes.

Section 17.42 of the DTPA provides:

Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void....

The Texas Supreme Court has never explicitly addressed the scope of § 17.42. In *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392 (Tex.1982), the Texas Supreme Court held that a contract for construction of a house could contain a waiver of the implied warranty of fitness. Robichaux had sued the builder under the DTPA, yet the Supreme Court did not mention the anti-waiver provision in the statute.

Based on *Robichaux*, several of the Texas appellate divisions have held that contractual disclaimers of warranties or clauses limiting liability are not void under the DTPA. *E.g., Eppler, Guerin & Turner v. Purolator Armored*, 701 S.W.2d 293, 296 (Tex.App. 5 Dist.1985); *McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755 (Tex.App. 1 Dist.1985). Not all the Texas appellate courts agree, however. In *Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785, 790 (Tex.App.-Fort Worth 1986), the court held that a contractual disclaimer of warranties only served as a waiver in breach of warranty actions brought under the DTPA, but was void in misrepresentation claims brought under the DTPA. In *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180, 186 (Tex.App. 14 Dist.1985), the Fourteenth Appellate District held that a limitation of liability clause was void in a DTPA case. The court stated:

The legislature obviously intended the DTPA to be a powerful tool in the campaign against deceptive trade practices ... A seller should not be able to avoid § 17.42 by merely including a limitation-of-liability clause in a standard form contract.

The Tenth Appellate District held that a disclaimer in an advertisement did not bar a DTPA claim. *Hycel, Inc. v. Wittstruck*, 690 S.W.2d 914, 922 (Tex.App. 10 Dist. 1985).

Only two Texas cases have addressed the issue directly raised here of whether a party can waive DTPA rights by conduct that is inconsistent with those rights. In *U.S. Home Corp. v. Hickie*, No. 81–83–00550–CV (Tex.Civ.App.—Houston Dec. 27, 1984, writ ref'd n.r.e.) the appellate court reversed a default judgment entered for the plaintiffs and remanded for trial because the court held the defendant had raised a meritorious defense. The defense raised was that the plaintiffs waived their DTPA claim because they knew of the defect before they purchased the property. The court did not discuss the anti-waiver provisions in the DTPA.

In *Rocha v. U.S. Homecraft Corp.*, 653 S.W.2d 53, 56–7 (Tex.App. 4 Dist.1983), the court held that a plaintiff had waived his right to treble damages under the DTPA when his attorney insisted in court that they were not seeking treble damages. The court stated that the anti-waiver provision in the DTPA "was clearly intended to void any attempt by a consumer to agree, in the relevant contract, to release any claim which they may have under the statute," *id.* at 57, but did not apply to waiver by subsequent conduct.

For our purposes today, the Texas cases can be reconciled by recognizing that the anti-waiver provision was intended to prevent the use of unequal bargaining power to circumvent the DTPA's protection of consumers. It was certainly meant to cover contractual clauses that prevent the assertion of a DTPA claim, although some Texas courts have approved disclaimers of warranties. The anti-waiver provision

might apply to conduct that is induced by unequal bargaining power, but that is not the case before us. Conduct that is knowing and intelligent, and that is inconsistent with the assertion of DTPA rights, can constitute a waiver of those rights. *See supra, Hickie* and *Rocha.*

The jury in this case was properly instructed that waiver is "the voluntary and intentional relinquishment or abandonment of a known existing right or intentional conduct inconsistent with claiming a known right."[10] The jury found that TMI had waived its right to complain of the conduct of MBank and Sabre. TMI asserts that the waiver instruction placed a due diligence burden upon it, a burden not intended to be placed on consumers under the DTPA. Reading the waiver instruction as a whole demonstrates the jury was correctly told it had to find TMI was aware of facts regarding the fraud and acted in a manner to show waiver. There is no indication that unequal bargaining power induced the waiver conduct found by the jury. We therefore reverse the district court's holding that TMI did not waive its right to assert the DTPA as a defense to MBank's recovery on the loans. Having found that TMI's affirmative DTPA claim is barred by limitations and that TMI waived its right to use the DTPA as a defense, we need not address TMI's assertion that it is entitled to attorney's fees as the prevailing party under the DTPA.

## V. *RICO*

■ TMI's counterclaim under RICO was never presented to the jury due to an unusual sequence of events. MBank opposed TMI's assertion of a RICO counterclaim in its Amended Answer. MBank asserted that another suit in which MBank was a defendant, known as the "Condor" case, would overlap with this one and cause undue prejudice to MBank by requiring the redeposition of witnesses and discovery of additional evidence.

In an Order filed July 31, 1984, the district court permitted TMI to add its RICO counterclaim but stated:

> The Court will not try the Condor litigation in connection with the case before the Court. Accordingly, counterclaim plaintiffs will be limited to the two factual claims involving the Condor investors which have been alleged in their amended counterclaim. First, they allege that counterclaim defendants Andrews and Langford represented in writing to the Condor investors that they had no direct or indirect material interest in the South Hamel Field, when in fact both owned interests in the property. Further, counterclaim plaintiffs allege that Andrews and Langford did not disclose to the Condor investors that the loans secured by the South Hamel Field interests were in default and had been or were about to be classified by federal banking authorities. No other claims involving the Condor investors may be presented in order to prove the elements of a RICO claim against the counterclaim defendants.

MBank next filed a summary judgment motion on the RICO claim, asserting that

10. The entire instruction is:
> *Waiver* is the voluntary and intentional relinquishment or abandonment of a known existing right or intentional conduct inconsistent with claiming a known right. In order to establish waiver where a party claims he was fraudulently induced into entering into a contract, the evidence must show that the defrauded party had knowledge of the material facts concerning the fraud at the time of entering a new contract based on the original transaction or taking other action inconsistent with repudiation of the original transaction. You are reminded that a defrauded party is charged with knowledge of the material facts concerning the fraud as a matter of law at the time he becomes aware of facts which would have led a reasonably prudent person to make an investigation, which if pursued with reasonable diligence would have led to the discovery of the fraud. Waiver cannot, however, be inferred from silence alone. In the absence of an express renunciation of a known right, there must be an act from which an intention to waive may be inferred. A waiver will not be implied unless the opposing party, whose rights would be injuriously affected thereby, has been misled to his prejudice into the reasonable belief that such waiver was intended or consented to.
> In answering the foregoing question, you are instructed to consider all the circumstances of the case.

the Second Circuit's decision in *Sedima v. Imrex Co., Inc.,* 741 F.2d 482 (2d Cir.1984), indicated that a prior criminal conviction for racketeering was a necessary predicate to a civil RICO claim. The Supreme Court then granted certiorari on the *Sedima* case, 469 U.S. 1157, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). Although it is not indicated in the record, the district court apparently decided not to rule on the summary judgment motion until the Supreme Court decided *Sedima*. *MBank Fort Worth, N.A. v. Trans Meridian, Inc.,* 625 F.Supp. 1274, 1285 (N.D.Tex.1985). The district court refused to continue the entire case but instead proceeded with trial of the other claims. *Id.* In the Pre-Trial Order entered on March 21, 1985, MBank's summary judgment motion was listed as "pending" and the issue of whether prior criminal convictions were necessary predicates was listed as a contested issue of law.

At the start of the trial a conference was held outside the presence of the jury. In discussing what evidence would be admitted, the court stated:

> I reiterated that yesterday, and I'm going to reiterate it again. I'm not going to try nor get into the Condor case in this case ... Of course, we're not going to try RICO in this case. We're going to try common law fraud.

As the dialog between the court and the attorneys continued, however, the court stated:

> What I'm trying to keep from getting into is, once we get into the facts of the Condor case ... I can see the relevancy of it and the admissibility of it on the basis of showing motive or plan or intent

of the parties and for no other purposes, and I'd give an instruction to that effect.

The court agreed that TMI could cross-examine witnesses to show a plan. What the court excluded was any reference to the pending Condor case.

There is no other indication in the record that TMI was inhibited in pursuing its RICO claim. The RICO claim was not presented to the jury and TMI did not request its submission to the jury. The trial ended on May 14, 1985. The Supreme Court announced its decision in *Sedima*, reversing the Second Circuit, on July 1, 1985. *Sedima v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). TMI took no action to inform the district court that the *Sedima* case had been decided.

On September 26, 1985, the district court entered its judgment in the case. The judgment did not discuss the RICO claim. TMI moved for a JNOV on its DTPA claim, or a new trial on its claims for common law fraud, securities fraud, and RICO. TMI erroneously stated that MBank's motion for summary judgment on the RICO claim had previously been granted. The district court interpreted TMI's motion to be a request for judgment on the RICO claim because TMI asserted that sufficient evidence had been presented to the jury so that the jury could have found in its favor on RICO. The court denied the motion, stating that under Federal Rule 49(a),[11] TMI waived its right to have the RICO claim submitted to the jury by failing to request that the RICO issues be submitted to the jury and failing to request instructions on that claim. 625 F.Supp. 1274.

---

11. **RULE 49. Special Verdicts and Interrogatories**

(a) **Special Verdicts.** The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court

shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

The district court was correct that TMI waived its right to a jury verdict on the RICO claim. The summary judgment that was left pending throughout the trial was MBank's motion to exclude the RICO claim. In the absence of a decision on that motion, the RICO claim was not excluded.

Although the district court stated it "would not try RICO," it permitted TMI to present evidence relevant to the RICO claim. TMI asserted in its motion for a new trial that enough evidence was presented so that the jury could have reached a verdict in its favor.

TMI had the burden to request submission of the RICO issues to the jury and to request instructions on those issues. In the absence of such a request, TMI waived its right to a jury verdict on RICO. Under Rule 49(a) the court is deemed to have made a finding in accord with its judgment. Given that the district court entered take-nothing judgments for all parties, we must assume the court did not find in TMI's favor on RICO. We affirm the district court's judgment denying TMI a new trial on its RICO claim.

### VI.  *Texas Securities Act*

■ TMI asserts that the district court's jury instructions on the Texas Securities Act, and the wording of the special interrogatories to the jury, erroneously placed a burden of due diligence on TMI. Therefore a new trial is required on its Texas Securities Act claim. Review of the instructions and interrogatories requires that we reverse and remand for a new trial of TMI's claim under the Texas Securities Act.

TMI brought counterclaims against MBank and Sabre under both the federal securities laws and the Texas Securities Act. In defense of both the federal and the state claims, MBank and Sabre asserted that TMI had failed to exercise due diligence in investing in the program. The court charged the jury:

> You are instructed that investors are required to exercise reasonable diligence in making an investment and that an investor has failed to exercise due diligence in making an investment where he has

knowledge of the fraud or was on notice of facts which would have alerted a reasonably prudent investor to make an investigation, which if pursued with reasonable diligence would have led to the discovery of the fraud.

In its charge on the Texas Securities Act the court stated that TMI must prove that:

> the TMI group did not know of such omissions or that the statements made by Sabre were untrue and in the exercise of reasonable care could not have known of such omissions or that the statements were untrue at the time of its decision to sign the Drilling and Participation Agreement.

The court then charged the jury on that element of proof:

> the TMI Group must not have known or should not have known of the alleged misrepresentations or omissions. You are reminded that a party must exercise ordinary care for the protection of his interest and that a party is charged with knowledge of the fraud as a matter of law at the time he becomes aware of facts that would lead a reasonably prudent person to make an investigation, which if pursued with reasonable diligence would have led to the discovery of the fraud.

In special interrogatory No. 57 the jury was asked:

> Do you find from a preponderance of the evidence that the TMI Group did not know and should not have known through the exercise of reasonable care of such omissions or that the statements made by Sabre were untrue at the time of the TMI Group's decision to sign the Drilling and Participation Agreement:

> ANSWER:  Yes ___  No _X_

> If you have answered "Yes" to Question No. 57 ... then answer Question No. 58, otherwise answer Question No. 60.

In Question No. 60 the jury found that TMI had failed to exercise due diligence. In Questions 62 and 63 the jury found that TMI "did discover or should have discovered" the untrue statements or omissions.

TMI made timely objections to the part of the instructions and the interrogatories on the Texas Securities Act that required TMI to exercise reasonable care to discover the untrue statements or omissions. TMI objected on the basis that the Texas Securities Act only excuses the defendant's conduct if the plaintiff actually knew of the misrepresentation or omission. TMI's analysis is correct.

Article 581–33 A(2) of the Texas Securities Act was amended in 1979 to exclude the language requiring a buyer to exercise reasonable care. The amended article states:

> a person is not liable if he sustains the burden of proof that ... (a) the buyer knew of the untruth or omission.... Tex.Blue Sky Law Civ. Code art. 581–33 A(2) (1987).

The official comment on the amended article states, "Plaintiffs are relieved from the difficult burden (imposed by old § 33A) of proving that they could not have known of the untruth or omission."

It is clear that the district court's instructions and interrogatories to the jury erred in placing a burden of due diligence on TMI. MBank asserts the error was harmless because, under MBank's reading of Question No. 57, the jury found that TMI actually knew of the omissions or untrue statements. We must disagree. The manner in which Question No. 57 was worded makes it impossible to tell what the jury meant by its "No" answer. If the jury found that TMI did not know but should have known of the omissions or misstatements, it would have to answer the question "no," meaning "No, we do not find that TMI did not know *and* should not have known." The jury would also have to answer the question "no" if it found that TMI actually knew of the omissions or misstatements. Given the ambiguity of the question and answer, and the fact that the jury was instructed to skip the following question on MBank's liability if it answered

"no" to Question No. 57, the error cannot be construed to be harmless.

MBank asserts the error was rendered harmless by the jury's finding that TMI waived its right to complain of MBank's conduct. MBank's argument fails because the Texas Securities Act contains an anti-waiver provision.[12] Neither the Texas courts nor the Fifth Circuit have considered whether the anti-waiver provision applies to a party's subsequent conduct. However, the Fifth Circuit has held that the same language in the federal securities laws does exclude the defense of waiver by subsequent conduct.

In *Meyers v. C & M Petroleum Producers, Inc.*, 476 F.2d 427 (5th Cir.1973) the defendant seller offered to repurchase the securities, an offer the plaintiff refused. The panel interpreted 15 U.S.C. § 77n, an anti-waiver provision containing the same language as the Texas statute, to bar assertion of a defense of waiver by subsequent conduct. The court stated, "Our holding in this case is that while the defendants-appellees established a waiver, the statute permits none." *See also Jones v. Miles*, 656 F.2d 103, 106 (5th Cir.1981) (the waiver defense is not available under federal and Georgia state securities laws).

The case cited by MBank, *Murtagh v. University Computing Company*, 490 F.2d 810 (5th Cir.1974), *cert. denied*, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 62, is distinguishable from this case. In *Murtagh* the panel held the plaintiff had waived its rights under federal securities laws by entering into a settlement agreement. The panel stated:

> Notwithstanding the provisions of the securities laws expressly voiding any private agreement waiving compliance with provisions of the laws, settlements of claims arising from acts which are violations of the securities laws are not void as a matter of law, at least where such settlement agreements do not themselves continue the precise conduct which vio-

---

12. Art. 581–33
   L. Waivers Void. A condition, stipulation, or provision binding a buyer or seller of a security to waive compliance with a provision of this Act or a rule or order or requirement hereunder is void. Tex. Blue Sky Law Civ. Code art. 581–33 L (1987).

lates the laws. But judicial hostility toward waivers of statutory rights requires that the right to private suit extended by the securities laws for alleged violations be scrupulously preserved against unintentional or involuntary relinquishment. Courts can scrutinize the settlement agreement to determine whether the waiver of private rights accomplished thereby is intentional. (citations omitted)

490 F.2d at 816. A settlement agreement, as the *Murtagh* panel pointed out, is a means to vindicate rights under the securities laws. Waiver by subsequent conduct that does not take the form of a settlement, is against the policy of the securities laws. The jury's finding of waiver is not a defense under the Texas Securities Act, and therefore does not make the erroneous instructions and interrogatories harmless.

We note that in its responses to interrogatories on the federal securities act claim, the jury found that any injury to TMI did not flow directly and proximately from MBank's actions. This finding cannot control the claim under the Texas Securities Act because the jury was instructed that TMI had a burden of due diligence under the federal laws. This makes it possible that the jury found that TMI's failure to exercise due diligence was the cause of its injury. In this context too, the erroneous due diligence instruction makes it impossible to discern the meaning of the jury's findings.

MBank asserts the jury could not find MBank violated the Texas Securities Act because there are no findings indicating MBank acted with scienter. However, the Texas statute only requires that a party act "with reckless disregard for the truth or the law." It does not require intentional misconduct.[13] In response to Question No. 61,[14] the jury found that MBank either knew of the misrepresentations or omissions or could have known of them through the exercise of reasonable care. The jury did not answer interrogatories that explicitly asked whether MBank's misconduct was intentional or performed with reckless disregard, because it was instructed to skip those questions if it found TMI had failed to exercise due diligence.

The jury's findings cannot be reconciled under proper Texas law. We therefore reverse the district court's judgment denying TMI a new trial on its claim under the Texas Securities Act and remand for a new trial of that claim.

■ The claims and counterclaims produced a complex, adversary proceeding with multiple, interrelated issues. The district court and the jury handled the issues with great ability, diligence and patience. Almost all of the legal and factual disputes between the parties were properly resolved. In the new trial of TMI's Texas Securities Act claim the court should not permit the relitigation of issues of fact or law which were properly resolved in the present action.[15]

### Conclusion

We affirm the district court's judgment in all respects except we reverse its holding that TMI did not waive its defensive use of the DTPA and reverse and remand for a new trial of TMI's claim under the Texas Securities Act.

13. Tex. Blue Sky Law Civ.Code art. 581–33 F(2) (1987).

14. QUESTION NO. 61:
    Do you find from a preponderance of the evidence that at the time the TMI Group invested in Sabre's well drilling program in the South Hamel Field, Sabre and/or MBank did not know and could not have known through the exercise of reasonable care of the misrepresentations and/or omissions you identified in Question No. 1, Question No. 6, Question No. 11 and Question No. 16?
    Answer as to both Sabre and MBank.

You are referred to the instructions on "reasonable care" read to you on pages 23 and 24 of the Court's Charge.

ANSWER:

|  | Yes | No |
|---|---|---|
| Sabre | __ | X |
| MBank | __ | X |

15. Federal collateral estoppel rules apply in diversity actions. Collateral estoppel bars relitigation of issues that are: 1) identical to those in the prior action; 2) fully litigated in the prior action; and 3) necessary to the judgment in the prior action. *Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198, 202 (5th Cir.1981).

AFFIRMED, in part and REVERSED in part, and REMANDED.